## Ex Parte Mrs. Parlee Cheatham, alias Denning.

### No. 3288. Decided May 16, 1906.

**1.—Embezzlement—Habeas Corpus—Requisition of the Governor—Indictment— Affidavit—Complaint.**

An extradition warrant cannot be issued on an information, but the law prescribes no particular form of warrant, and if when inspected it is found to contain the essential elements required under the Federal enactment it will be sufficient; and a complaint is an affidavit; nor is it necessary that the executive warrant should be accompanied by certified copies of the affidavit or indictment or that they should be set out therein; or that they were presented to the Governor. See opinion for form of executive warrant held sufficient.

**2.—Same—Authority of Courts to go Behind Executive Warrant.**

It is not an open question as to the authority of courts of this State to go behind the executive warrant, in order to examine and review the ground upon which the Governor may have issued his extradition warrant.

**3.—Same—Authentication.**

See opinion for proper authentication of affidavits by the executive of the State of Colorado, to form basis for action by the Governor of this State.

**4.—Same—Case Stated—Affidavit—Extradition.**

Upon requisition of the Governor of the State of Colorado upon the Governor of the State of Texas, the affidavit upon which the requisition was based showed that affiant made oath to same on information and belief, and also showed upon its face to charge an offense over which the courts of the State of Colorado did not have jurisdiction, because if an offense was committed it was committed in the State of Kansas. Held, that the action of the Governor of Texas in issuing his extradition warrant could be reviewed and set aside by the courts, as not complying with the law governing extraditions. Brooks, Judge, dissents.

Appeal from the District Court of Bexar. Tried below before the Hon. Edward Dwyer.

Appeal from an order remanding relator as a fugitive from justice to custody, on proceeding by habeas corpus.

The opinion states the case.

*Onion & Henry, T. J. Newton, John Storm,* for relator.—On question of authentication: Patterson v. State, 17 Texas Crim. App., 103; Rev. Stat., U. S., sec. 905.

*J. E. Yantis,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Upon application of the Governor of the State of Colorado, the Governor of Texas granted a requisition for the appellant, and she was arrested by the sheriff of Bexar County, and upon the hearing of her application for the writ of habeas corpus, she was remanded to custody.

The warrant from the Governor of this State, by virtue of which the respondent held the relator, was introduced in evidence on the hearing, and is as follows:

"The State of Texas.

To all and singular the sheriff, constables and other civil officers of said State:

Whereas, it has been made known to me by the Governor of the State of Colorado, that Mrs. Parlee Denning stands charged by complaint and information before the proper authorities, with the crime of embezzlement, committed in said State, and that the said defendant has taken refuge in the State of Texas; and Whereas the said Governor, in pursuance of the Constitution and Laws of the United States, has demanded of me that I cause the said fugitive to be arrested and delivered ·to Geo. F. Dayton, who is, as is satisfactorily shown, duly authorized to receive her into custody and convey her back to said State; and Whereas, said demand is accompanied by copy of said complaint and information duly certified as authentic by the Governor of said State.

Now, therefore, I, S. W. T. Lanham, Governor of Texas, by virtue of the authority vested in me by the Constitution and Laws of this State, and of the United States, do issue this my warrant, commanding all sheriffs, constables and other civil officers of this State, to arrest and aid and assisting in arresting said fugitive and to deliver her when arrested to the said agent in order that she may be taken back to said State, to be dealt with for said crime.

In Testimony Whereof, I have hereunto signed my name and have caused the Seal of State to be hereon impressed, at Austin, Texas, this 27th day of March, A. D., 1906.

                                        S. W. T. Lanham, Governor.

(Seal)
By The Governor:
        O. K. Shannon, Secretary of State."

Appellant urged various objections to the executive warrant, contending that it does not comply with article 5278, Revised Statutes

United States, and with article 1051, Code Criminal Procedure of Texas. Among other things he contends that said article requires that the requisition (according to the U. S. statute) should be "stands charged by indictment or by affidavit as the case may be." The authorities seem to require that the charge should be made by one or the other of these methods. And our own decisions appear to concur with these, except a complaint in this State is regarded as the equivalent of an affidavit. It has never been held, so far as we are advised, that an extradition warrant would issue on an information. In Ex parte White, 39 Texas Crim. Rep., 497, it is held that the law prescribes no particular form of warrant, but if when inspected it is found to contain the essential elements required under the Federal enactment it will be sufficient. It is there distinctly held that a "complaint" is an affidavit. We take it, that this was because our law authorizes a prosecution of criminal cases before magistrates, either as trial courts or examining courts, on what are termed in the statutes "complaints." These must be sworn to.

It is not necessary that the executive warrant should be accompanied by certified copies of the affidavit or indictment, or that this should be set out in the warrant. See Ex parte Stanley, 25 Texas Crim. App., 372.

Nor is it necessary that the executive warrant should recite that the affidavit or indictment from the demanding State was presented to the Governor of Texas, by any legal authority from the State of Colorado.

We hold that the executive warrant is sufficient. Ex parte White, 39 Texas Crim. Rep., 498; Ex parte Stanley, 25 Texas Crim. App., 372; Ex parte Thornton, 9 Texas, 635. Kingsbury's case, 106 Mass., 223.

On the trial appellant insisted on going behind the executive warrant, in order to show, as she claimed, that the requisition papers from the governor of the State of Colorado, were not sufficient to authorize the governor of this State to issue his writ of extradition. And she offered certain papers from the office of the secretary of state, including two affidavits, in order to show that the executive warrant was not authorized. These were rejected by the trial court, and appellant reserved her bill of exceptions to the action of the court.

It is not an open question as to the authority of courts of this State to go behind the executive warrant, in order to examine and review the grounds upon which the governor may have issued his extradition warrant. Ex parte Thornton, 9 Texas, 635; Ex parte Rowland, 35 Texas Crim. Rep., 108; Ex parte Hart, 63 Fed., 260; Bruce v. Payner, 124 Fed., 481; Roberts v. Riley, 116 U. S., 80; State v. Richardson, 34 Minn., 115; People ex rel. Lawrence v. Brady, 56 N. Y., 190. In Roberts v. Riley, supra, it is said: "It must appear from the requisition papers to the governor of the State to whom

such a demand is presented, before he can lawfully comply with it, first, that the person demanded is substantially charged with a crime against the laws of the State from whose justice he is alleged to have fled, by an indictment of an affidavit, certified as authentic by the governor of the State making the demand. Second, that the person demanded is a fugitive from the justice of the State, the executive authority of which makes the demand. The first of these prerequisites is a question of law, and is always open upon the face of the papers to judicially inquire on an application for discharge under the writ of habeas corpus. The second is a question of fact which the governor of the State upon whom the demand is made must decide upon such evidence as he may deem satisfactory. How far his decision upon this latter question may be reviewed judicially in proceedings in habeas corpus, or whether it is not conclusive, are questions not settled by harmonious judicial decisions, nor by any authoritative judgment of this court." In that case, however, the court appears to have gone into the latter question, and held that the governor was correct in his decision that the party was a fugitive from justice.

The first proposition urged by appellant is, to the effect that the papers, that is neither of said affidavits are certified as authentic by the governor of the State of Colorado. The holding of the courts seems to be quite uniform that this must appear in some way before the governor of the extraditing State is authorized to issue his warrant. Ex parte Hart, 63 Fed. Rep., 258; Ex parte Morgan, 20 Fed. Rep., 307; Roberts v. Riley, 116 U. S., 95. Ex parte Morgan, supra, citing Ex parte Thornton, 9 Texas, 635, holds: "The representations of the executive of the demanding State are of no effect, unless supported by a duly authenticated copy of an indictment found or an affidavit made." It will be seen by an examination of the authorities that this certificate of the executive of the State making the requisition must appear in some form or other. Obviously, and the cases seem to so hold, this certificate should appear on or attached to the indictment or affidavit. However, in Kingsbury's case, supra, the certificate of the governor appeared to be in his requisition. In that he recites, "as will more fully appear by the papers hereunto annexed, which I certify to be authentic." The statutes of Massachusetts were referred to, and this authentication was held to be sufficient. In the case at bar the two papers, constituting the alleged affidavits (and which were rejected) are before us in bills of exception, but there is no certificate of the governor to either, that the same were authentic copies of proceedings had before the magistrate of Colorado. If we are to apply the maxim, that all things are to be presumed in favor of the action of the governor, that same were rightly done, and that his requisition was attached to the papers above mentioned, or that said papers were attached to it, and that he stated therein, that said annexed papers were duly authenticated in accordance with the laws of

said State, then, in accordance with the Massachusetts case, the certificate of authentication would be sufficient.

Another proposition insisted on, is to the effect that the affidavit on which the requisition was granted is not such an affidavit as is required by law; that is, is one made on information and belief merely. An inspection of the record before us shows that the two affidavits were introduced in evidence, and both rejected by the court; the court refusing to go behind the governor's warrant.

In this connection, however, it is urged that but one of these affidavits can be considered by this court; that the other was not made for the purpose of a requisition, but was made before a justice of the peace of Colorado, on the 10th of February, 1906, merely for the purpose of procuring process in the State of Colorado for Henry Denning and Mrs. Parlee Denning. This affidavit, it may be stated, is in general terms, and was made before W. N. Ruby, said to be justice of the peace of El 'Paso County, in the State of Colorado, charging embezzlement of the two deeds in question, from David McKee; and David McKee makes this affidavit. · The other affidavit is made by Robert L. Hubbard, attorney for McKee, on the 23rd day of March, 1906, and appears to be the paper asking for the requisition, and on which the requisition was evidently granted. If the other paper in question was a requisition, a warrant should have been issued for both Henry Denning and Parlee Denning, as the affidavit is made against both of them. The requisition is made for Parlee Denning only. The other papers in the record further indicate that this was the paper on which the requisition was granted, and the writ issued. We copy said paper, as follows:

"State of Colorado, ⎱ ss.
County of El Paso. ⎰

Robert L. Hubbard, being first duly sworn, on oath states: that he is an attorney at law, practicing in said County of El Paso, and has been the legal counsel and adviser of the said David McKee concerning the matters and things which led to the arrest and detention of one, Mrs. Parlee Denning, in the city of San Antonio, and State of Texas; that before said arrest, and to wit: the 10th day of March, 1906, the said McKee left the office of affiant for the purpose of finding the said Mrs. Parlee Denning; that prior thereto, the said McKee sent a large number of telegrams to different places in the United States for the purpose of discovering the whereabouts of the said Mrs. Parlee Denning; that to affiant the said McKee fully confided all facts and circumstances concerning the transaction for which the said Mrs. Denning was arrested and is now detained as aforesaid; that upon such information so given to said affiant by the said McKee, and upon affiant's belief, affiant states the facts to be that at or about the time stated in the complaint made by the said McKee before one W. N. Ruby, justice of the peace, the said Mrs. Parlee Denning ob-

tained from the said McKee two title deeds, purporting to convey to said McKee valuable lands in the State of Kansas, which said deeds were then of the value of five thousand dollars ($5,000); that the said Denning then and there promised and agreed to and with the said McKee that she would take those deeds to the proper recorder of deeds in the county where the land described in said deeds is situated, and there record the same. And thereupon said McKee did deliver to the said Denning said deeds for said purpose; that the said Denning did not record said deeds, but converted them to her own use; that when said Denning left the said McKee, as she did, in Colorado Springs, in the State of Colorado, within a few days after said deeds were delivered to her, she departed for the State of Kansas, and there obtained other conveyances to said property, by which she transferred the title to other persons than the said McKee, who were wholly ignorant of the rights of said McKee.

That the application for requisition is made in good faith for the sole purpose of punishing the accused, and that said McKee does not desire or expect to use the prosecution for the purpose of collecting a debt, or for any private purpose, and will not directly or indirectly use the same for any of said purposes.

Robert L. Hubbard.

Subscribed and sworn to before me, this 23rd day of March, A.D. 1906.

W. N. Ruby    (Seal)<br>Justice of the Peace."

Now, the question is made as to this: First, that it was made on information and belief, and not directly predicated upon facts within the knowledge of the affiant, Robert L. Hubbard. An inspection of the paper shows such to be the case; that is, that the affidavit was made on information and belief only. We hold that this was not sufficient. Ex parte Rowland, 35 Texas Crim. Rep., 108; Ex parte Morgan, 20 Fed. Rep., 307; Ex parte Hart, 63 Fed. Rep., 259. In the latter case, this question was thoroughly discussed, and we quote from that opinion as follows: "By requiring such an affidavit the liberty of the citizen is to a great extent protected, and the executive upon whom the demand is made is thereby enabled to determine if there is cause to believe that a crime has been committed. To authorize the removal of a citizen of Maryland to the State of Washington for trial on a charge of crime, something more than the oath of a party unfamiliar with the facts, that he believes the allegations of an information to be true, should be required and is demanded by the law. To hold otherwise would enable irresponsible and designing parties to make false charges with impunity against those who may be the subject of their enmity, and permit them, after they have caused public officials to believe their representations to secure the arrest and imprisonment and removal of innocent persons on papers regular in character, but without merit and fraudulent in fact." In

Rowland's case, supra, this same question was before this court, and we held that the affidavit which showed affiant made oath to same on information and belief was not sufficient.

It is further insisted that the affidavit here presented, does not charge an offense at all, or if it does, it charges an offense over which the courts of Colorado did not have jurisdiction. An inspection of the affidavit shows that the attorney making it was careful not to allege in general terms the offense, but to state the facts which he assumed constituted an offense in Colorado. This offense was evidently brought under the amended act of the Legislature of Colorado, in 1893. (See sessions, acts of Colorado, for 1893, page 119.) This act makes it an offense for any one to embezzle or fraudulently convert to his own use, or secrete with intent to embezzle, or whoever fraudulently converts to his own use, money, goods or property, delivered to him, which may be the subject of larceny, shall be deemed guilty of larceny, and punished accordingly. That is, it undertakes to make embezzlement as stated larceny and punishable accordingly. We may concede that the deeds in question were property and the subject of larceny or embezzlement, but does said affidavit show that this act of embezzlement was committed in the State of Colorado? On the contrary, does it not show that the act of conversion was consummated in the State of Kansas. It is said that Mrs. Parlee Denning obtained from said McKee two title deeds, etc., purporting to convey valuable lands in the State of Kansas; that said Denning promised and agreed that she would take said deeds to the recorder of deeds in the county where the land described in said deeds was situated, and there record the same; that said deeds were delivered to her for said purpose; that she did not record the deeds, but converted them to her own use, to wit: that she left the State of Colorado, within a few days after said deeds were delivered to her for the State of Kansas, and there obtained other conveyances to said property by which she transferred the title to other persons than the said McKee, who was wholly ignorant of the rights of said McKee. According to these allegations we believe there is no escape from the proposition that the act, if same was an act of embezzlement, was consummated in the State of Kansas; and that the affidavit itself on its face shows that this was not an offense in the State of Colorado. While it is not competent in this forum in a case of this character, to look into the elements of an indictment, and to quash the same on account of some irregularity or some inherent defect, yet it is competent for this court to look into the requisition papers in order to determine whether or not the affidavit contains an offense cognizable and punishable in the demanding State. On this subject see State v. Richardson, 34 Minn., 115; Ex parte Morgan, 20 Fed. Rep., 308; Kentucky v. Dennison, 24 How., 66. In Morgan's case, supra, it is said: "It must appear to the governor honoring the requisition that the tribunals of the demanding State or territory had jurisdiction to try, or else how

can a charge of crime be legally made. 'Charged with Crime' in legal parlance, means charged in the regular course of judicial proceedings. A man cannot be legally charged with crime when there is no jurisdiction to try him. The fact that he is so legally charged means that he is charged by an authority having a right to try him. The right to try means jurisdiction over the place where the crime had been committed, and over the person who commits it." In that case it was held the court did not have jurisdiction, for failure to make an allegation in the indictment that the party was an Indian. The court of the territory having no jurisdiction to try others than Indians for murder. In this case it is not for want of an allegation to give jurisdiction; on the contrary, the allegations themselves oust the courts of Colorado of jurisdiction.

It is a matter of some delicacy to review the action of the executive of this State in granting his extradiction warrant. However this is a duty of courts, and involves a responsibility cast upon them, which they are required to meet. We cannot assent to the claim that the act of the executive in granting an extradition warrant cannot be inquired into. The removal of a person from this State for whom the writ of extradition has been granted is summary in its character, and the provisions of the act of Congress must be strictly complied with. If a person has committed crime in one State, and fled to another, the demanding State is only required to pursue those provisions of the laws of Congress which authorize the warrant of extradition to issue. These provisions are plain, and can be easily followed. No State should permit itself to be made the harbor or refuge for criminals of other States. On the other hand the liberty of the citizen is involved, and the provisions of law which Congress has erected for his safeguard, should be respected and complied with. These provisions are intended for the protection of the citizen against undue arrest and extradition, and the writ of habeas corpus is provided, in order to protect the humblest as well as the highest in his or her rights and privileges. We hold in this case, that the law has not been complied with. The judgment is reversed and appellant ordered discharged.

*Relator discharged.*

BROOKS, JUDGE (dissenting).—I do not agree with the opinion of the majority of the court. An inspection of this record shows that every legal requisite necessary was complied with prior to the granting of the executive warrant by the Governor of this State, and the executive warrant is in proper form.

Appellant's bill of exception makes it appear that the following affidavit (or complaint and information) was filed in a court of competent jurisdiction in the State of Colorado; and this is the affidavit upon which the Governor predicated his warrant:

"State of Colorado,
El Paso County.

The complaint and information of David McKee, made before W. N. Ruby, Esq., one of the justices of the peace in and for said county, on the 10th day of February, A. D., 1906, who, being duly sworn, on oath, says: that Henry Denning and Mrs. Parlee Denning, on the 9th day of January, A. D., 1906, in said county, being then by virtue of such agency, receive and take into their possession from him, the said McKee, then and there by the said McKee delivered and there the agents of the said David McKee, did then and there, to them, the said Henry and Parlee Denning as such agents, one certain warranty deed executed by one James McAdams, and conveying title to real estate to the said McKee, and one certain quit-claim deed executed by the said Henry Denning and conveying the said real estate to said David McKee, each of said deeds being then and there of the value of $5,000, and the property of the said McKee, and so received for and in the name and on account of the said McKee, and afterward did then and there fraudulently and feloniously. embezzle the same and fraudulently and feloniously convert the same to their own use and the same secrete with intent to embezzle; and so the said Henry and Parlee Denning did then and there in manner and form aforesaid, the said warranty deed and the said quit-claim deed, the property of the said David McKee, their principal and employer, from the said David McKee feloniously steal, take and carry away, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the People of the State of Colorado.

He therefore prays that the said Henry Denning and Mrs. Parlee Denning may be arrested and dealt with according to law.

David McKee.

Sworn to and subscribed before me, this 10th day of February, A. D., 1906.

W. N. Ruby, (seal)
Justice of the Peace.

State of Colorado,
County of El Paso.

I, W. N. Ruby, justice of the peace, within and for the county of El Paso and State of Colorado, do hereby certify that the foregoing is a true and correct copy of the complaint filed in my office on the 10th day of February, 1906, in the suit wherein the People of the State of Colorado are plaintiff and Henry Denning and Mrs. Parlee Denning are defendants. Witness my hand this 23rd day of March, 1906.

W. N. Ruby, (seal)
Justice of the Peace.

Endosed: Criminal Complaint.

The People of the State of Colorado v. Henry Denning and Mrs. Parlee Denning. Complaint of David McKee made and filed in my

office, this 10th day of February, A. D., 1906. W. N. Ruby, justice of the peace."

A casual inspection of this affidavit shows it charges relator with a criminal offense in the State of Colorado. The majority opinion says: "We may concede that the deeds in question were property and the subject of larceny or embezzlement."

Subsequent to the filing of this complaint Robert L. Hubbard, an attorney representing McKee (the party from whom the deeds were stolen) filed an affidavit before the Governor of the State of Colorado (which affidavit is quoted in the opinion of the majority), in which affidavit it appears that above affidavit of McKee had been previously filed, charging relator with the crime stated. The affidavit of the attorney was merely filed in order to give the governor official notification of the fact that relator was a fugitive from the jurisdiction of the State of Colorado, and was in the State of Texas, and asked the governor for a requisition upon the Governor of Texas for the arrest of the relator. The affidavit of Hubbard is not a "certified copy" of any record from the State of Colorado, and appears to be an original affidavit, and not filed in any court or before any justice of the peace. It is not an affidavit charging a criminal offense, as is the affidavit of McKee. The affidavit of McKee shows it was endorsed a "criminal complaint;" and filed by the justice of the peace in the case of "the People of the State of Colorado v. Henry Denning and Mrs. Parlee Denning." The affidavit of Hubbard was evidently presented to the Governor of Texas to evidence the fact that Mrs. Parlee Denning was a fugitive from justice, and this fact was necessary to be established to the Governor of Texas before the executive warrant could issue.

It will be noted that the majority opinion does not set out the complaint of McKee, but the opinion is based upon the affidavit of Hubbard, and that relator should be discharged because that affidavit does not charge an offense. This affidavit was merely filed with the Governor of Colorado as a predicate for the issuance of the requisition.

For ought that is shown by the bill of exceptions of relator, the affidavit of McKee was accompanied by a certificate, duly authenticating it as required by the Federal Statute. Relator merely introduced part of the papers, and we must presume that the Governor of Texas acted within the legitimate scope of his authority. We cannot take a bill of exceptions prepared by relator as conclusive proof that there was no certificate on the complaint of McKee introduced and copied above. If there was such a certificate, and such presumption will be indulged, every statutory prerequisite has been complied with in the granting of this requisition, and the judgment of the lower court remanding relator to custody, to be delivered to the proper officer from Colorado, should be affirmed.

DAVIDSON, PRESIDING JUDGE.—Judge Brooks in his dissent, states that the majority opinion does not set out the affidavit of David

McKee. However, as will be seen from the original opinion that affidavit is referred to and its contents substantially stated, but the holding of the court being essentially based on the affidavit of Hubbard that only was set out.

We notice that the dissenting opinion adopts the McKee affidavit as the basis for the writ of requisition by the Governor of Texas. However, no particular reason is assigned for that selection. In the majority opinion, the court definitely stated the reasons for adopting the affidavit of Hubbard. It seems that Judge Brooks was compelled also to resort to the Hubbard affidavit as authority for granting the requisition, on the ground that the McKee affidavit made no allusion to the fact that Mrs. Parlee Denning was a fugitive from justice. He uses said affidavit for this purpose but abandons it for any other purpose. We believe if it was necessary to resort to this affidavit as a basis for the requisition on any pretext, that we would be constrained to adopt the same entirely as the predicate for the requisition warrant.

Let us assume, however, that both were before the Governor of Texas, and Judge Brooks appears to treat both as before him, and see how the case then stands. Both charged the same matter as constituting the offense alleged against Mrs. Parlee Denning. The McKee affidavit in general terms charges the offense, while the Hubbard affidavit charges the same offense and gives the details or particulars thereof. These show an offense not committed in the State of Colorado but if an offense in any forum, committed in the State of Kansas. That was the real offense for which the governor granted his writ of requisition, and it showed absolutely the want of authority on the part of the executive of this State to have issued said writ. The dissenting opinion does not attempt to avoid this proposition. So we hold that, even if it be conceded that both affidavits were before the governor of this State (as Judge Brooks holds), there was no authority on the part of the executive of this State to have issued said writ. The same was issued, as stated in the original opinion, on an affidavit charging the offense on information and belief, and was issued for an offense (if it was an offense anywhere) in the State of Kansas, and not in the State of Colorado. For the reasons herein stated, and as stated in the original opinion, I believe that the judgment should be reversed and appellant discharged.

*Reversed and relator discharged.*