Bauer v. State.

---

EMIL BAUER v. STATE OF NEBRASKA.

FILED APRIL 29, 1916.   No. 19492.

1. **Criminal Law:** EMBEZZLEMENT BY AGENT: EVIDENCE OF DUTIES: ADMISSIBILITY. In a prosecution for embezzlement of the moneys of a corporation by its agent and general manager, the secretary may testify as to the specific duties of the manager, where the duties of such manager are not fully set forth in the charter and by-laws of the corporation.

2. ———: ———: BOOKS OF ACCOUNT: EXAMINATION: EVIDENCE AS TO RESULTS. Where, in such a prosecution, it appears that the business of the corporation amounted to more than $300,000 in a single year and consisted of many thousands of transactions with different individuals, an expert accountant who has examined the books of the corporation, as kept by the defendant, and which books were

in court subject to defendant's inspection, and has compiled a financial statement of their contents, may testify as to the result of his examination.

3. **Embezzlement:** VERDICT: SUFFICIENCY OF EVIDENCE. Evidence examined, its substance set forth in the opinion, and *held* sufficient to sustain the verdict.

4. ———: TRIAL: INSTRUCTIONS. In such case it was not reversible error for the court to instruct the jury that as to the count charging the embezzlement of $2,000 on or about March 9, 1915, it is not necessary for the state to prove the embezzlement of the whole of said amount, nor of any particular amount on any particular day, but "if you find from the evidence a continuous series of felonious conversions of money by the defendant at different times and in different amounts before that date and subsequent to January 1, 1914, and not included in any other count, you are entitled to consider the aggregate sum of such separate conversions of money by the defendant as the amount of embezzlement under this count; but not over the sum of $2,000, which is the amount charged."

5. **Criminal Law:** TRIAL: ADDITIONAL INSTRUCTIONS. While the jury were deliberating on their verdict, they came into court and requested further instructions, and the same were given. The defendant, being present with his counsel in court, made no objection. The giving of the instructions did not constitute reversible error.

6. ———: ———: ———. In answer to a request by the jury for further instructions, the court gave the following in writing: "In your finding as to the value, the word 'about' does not conform to the statute. You may renew your deliberations, and, in case your verdict is guilty, you should find some definite amount, such sum as you are able to say beyond a reasonable doubt is the amount and value embezzled." The defendant and his counsel made no objection to this instruction, and the giving of it did not constitute reversible error.

7. ———: EVIDENCE: ADMISSIBILITY: AVOIDANCE OF ARREST. Evidence that the defendant left his employment and went to other states and cities with the view of avoiding arrest may be received, not as a confession of his guilt, but simply as a circumstance to be considered by the jury with all of the other evidence in arriving at their verdict.

8. **Statutes:** REPEAL AND RE-ENACTMENT: EFFECT. The rule seems to be settled in this state that the simultaneous repeal and re-enactment of a statute in terms, or in substance, is a mere affirmance of the

original act, and not a repeal in the strict or constitutional sense of the term. *State v. Bemis*, 45 Neb. 724.

ERROR to the district court for Clay county: LESLIE G. HURD, JUDGE. *Affirmed.*

*McCreary & Danley, Ambrose C. Epperson* and *George W. Miller,* for plaintiff in error.

*Willis E. Reed, Attorney General, Charles S. Roe* and *M. L. Corey, contra.*

BARNES, J.

Emil Bauer was tried in the district court for Clay county on an information containing 13 counts charging him with the embezzlement of certain sums of money belonging to the Harvard Co-operative Grain & Live Stock Company, a corporation of which he had been the managing agent.

On the trial all of the counts of the information were eliminated except the first, second, fourth and thirteenth. The jury found Bauer not guilty as to the first, second and fourth counts, and guilty on the thirteenth count of said information, which charged him generally with the embezzlement of the sum of $2,000 of the funds of the corporation on or about March 9, 1915. His motion for a new trial was overruled, and he was given an indeterminate sentence of from one to five years in the state penitentiary. To reverse that judgment, he has brought the case to this court by a petition in error. In this opinion he will be designated as the defendant.

Much reliance seems to have been placed on the assignment that the court erred in receiving the testimony of witness Dieringer, who was the secretary of the corporation. It appears from the record that defendant's powers and duties were set forth in the articles of incorporation and by-laws in the most general way, but his specific duties were to buy and sell grain, collect the money due the company, deposit it in the bank and check

it out, keeping a record of his transactions in triplicate on slips provided for that purpose, and from which slips the books of the corporation were kept and posted. The record discloses that the secretary had personal knowledge of the facts to which he testified, and which were in addition to those stated in the by-laws. The evidence was competent, and the objection that it was not the best evidence is without merit. The statement of the same witness as to the duties of Miss Ketchum, who was the bookkeeper, was also competent and not subject to the objection that it was not the best evidence.

Defendant's next contention on which he seems to place reliance was that the court erred in receiving the testimony of the expert accountant who examined the books of the company and compiled a statement therefrom. The statement was used to refresh his recollection in connection with the books themselves which were in court subject to the defendant's inspection. The record shows that the business of the company totaled over $300,000 in a single year, and consisted of many thousand entries. Therefore it was practically impossible to trace each entry in the books and place the result thereof before the jury. In such a case an expert accountant may testify as to the results of his examination of the books and the accounts of the company. *Bartley v. State,* 53 Neb. 310; *Bode v. State,* 80 Neb. 74; *Mendel v. Boyd,* 71 Neb. 657. It is further contended that the witness had not complied with the provisions of section 5820-5825, Rev. St. 1913, and therefore his evidence was incompetent. The record shows that Mr. Thomas, who was the expert accountant, had served acceptably in that capacity for many years. He thoroughly qualified himself to testify and therefore this objection is without merit. We think what we have said as to the introduction of testimony is sufficient to dispose of all of such objections and assignments relied on by the defendant.

As to the question of the sufficiency of the evidence to sustain the verdict, the record shows beyond a reasonable

doubt that during the year 1914 and up to the 9th day of March, 1915, when defendant left his employment, he was short in his accounts with the company to the amount of $6,430.   The several items included in that amount were taken and used by the defendant from time to time during the period above mentioned..  He was a witness in his own behalf and attempted an explanation of certain items found in his accounts.   His explanations covered· the items with which he was charged in the first, second and fourth counts of the information, together with some other items, amounting in all to $1,043, or a total of $1,373.   Giving him full credit for this· amount, the testimony shows that more than $5,000 of the ·company's money was unaccounted for.   It seems clear that at the date of the charge contained in the information on which he was convicted his shortage amounted to more than $5,000, and we are of opinion that the evidence sustains the verdict.

The court instructed the jury: "In count number 13 of the information the state charges an embezzlement by the defendant of about the sum of $2,000, on or about the 9th day of March, 1915.   You are instructed as to this count that it is not necessary for the state to prove the embezzlement of the whole of said amount of $2,000, nor of any particular amount on any particular day, but if you find from the evidence a continuous series of felonious conversions of money by the defendant at different times and in different amounts before that date and subsequent to January 1, 1914, and not included in any other count, you are entitled to consider the aggregate sum of such separate conversions of money by the defendant as the amount of embezzlement under this count; but not over the sum of $2,000, which is the amount charged."

This instruction is assigned as error, and it seems to be the contention of the defendant that the several amounts of money taken and converted to his own use cannot be found and taken together for the purpose of

sustaining a conviction under the thirteenth count. We think that as to this assignment the defendant is mistaken. The rule announced in *Bolln v. State,* 51 Neb. 581, sustains such an instruction. In 9 R. C. L. p. 1299, it is said: "Proof that the money alleged to have been embezzled by an agent was received in several sums, at different times, and from different persons, during a course of continuous dealing between such agent and his principal, will support a verdict finding the aggregate sum as the amount of a single embezzlement." *State v. Moyer,* 58 W. Va. 146, 6 Am. & Eng. Ann. Cas. 344, is cited. We think this rule too well settled to be a subject for further discussion.

We have examined the other instructions given by the court and those requested by the defendant and refused, and find no reversible error.

The record further discloses that, while the jury were deliberating upon the verdict, they returned into court in charge of the officer and propounded the following question: "Did Miss Ketchum's white slips correspond with the bank slips?" The defendant was present with his counsel in court at that time, and the court, without any objection on his part, answered the interrogatory as follows: "I answer, 'My recollection of the evidence is that the white slips furnished her by Emil Bauer on the deposit slips of the bank correspond in amount or in case of mistake in figures were corrected and when corrected balanced $..........'" The bill of exceptions shows that Miss Ketchum so testified, and we are of opinion that it was not reversible error for the court to give the instruction to the jury of which defendant complains.

It also appears that the court instructed the jury during their deliberation as follows: "In your finding as to the value, the word 'about' does not conform to the statute. You may renew your deliberations, and, in case your verdict is guilty, you should find some definite amount, such sum as you are able to say beyond a reasonable doubt is the amount and value embezzled." This addi-

tional instruction was given in writing in open court in the presence of the defendant and his counsel without objection on his part. Under the rule announced in *Jameson v. State,* 25 Neb. 185, it was not reversible error for the court to so instruct the jury.

It appears from the record that on or about the 8th day of March, 1915, the defendant, fearing trouble by reason of the condition of the affairs of the company, left his employment and fled from Harvard; that in about a month thereafter he returned and was arrested by the sheriff of Clay county. The sheriff was allowed to testify to that fact, and to further testify as to defendant's admissions that while he was absent from Harvard he went from place to place throughout several southern cities and states in an attempt to avoid arrest. The admission of this testimony is assigned as error. It appears, however, that it was received, not as a confession of defendant's guilt, but simply as a circumstance to be considered by the jury together with all of the other evidence in the case in arriving at their verdict. The testimony was competent. 8 R. C. L., p. 192; 12 Cyc. 395; *George v. State,* 61 Neb. 669.

Finally, it is contended that the Revised Statutes 1913, relating to embezzlement, having been repealed by an act of the legislature of 1915 (Laws 1915, ch. 157) entitled "An act to amend section 8649 of the Revised Statutes of Nebraska for 1913, relating to embezzlement, and to repeal said original section," there could be no prosecution under that section or under the section as amended by the act of 1915, for the reason that the acts constituting the crime as it stood prior to the amendment had been wiped out by the repeal, and the new act of 1915 amounts to an *ex post facto* law to punish for acts committed prior to the criminal statute defining the crime of embezzlement. If this contention should be sustained the defendant could not be punished for the series of conversions of money under his scheme to cheat and defraud

99 Neb. 48

the elevator company because of the failure of the legislature properly to protect pending prosecutions. The argument of defendant's counsel is based on the general rule that the repeal of the act defining a crime deprives the court of power to render a sentence upon a verdict finding defendant guilty. This contention disregards the situation in this case. There was no change whatever in the definition of the crime of embezzlement by the amendment of 1915. So far as this prosecution is concerned, the statute is the same, and the penalty imposed is absolutely unchanged. To quote the two statutes would render this opinion entirely too long. It is sufficient to say that the only change in the statute, so far as it affects the rights of the defendant, is that in the old statute the words "by virtue of such employment" are used, while in the statute as amended the following appears: "Which shall have come into his or her possession or care, in any manner whatsoever." The rule adopted in this state is that where a new act is in the very words of the statute which it repeals, and it is clear that the repeal and re-enactment were intended to continue in force the uninterrupted operation of the old statute, they will be so construed, and will apply to crimes committed before the new act took effect. *State v. Wish,* 15 Neb. 448; *State v. McColl,* 9 Neb. 203; *Wright v. Oakley,* 5 Met. (Mass.) 400; *Fullerton v. Spring,* 3 Wis. 677; *Hair v. State,* 16 Neb. 601; *State v. Bemis,* 45 Neb. 724; *Stenberg v. State,* 50 Neb. 127. The rule seems to be that the simultaneous repeal and re-enactment of the statute in terms, or in substance, is a mere affirmance of the original act, and not a repeal in the strict or constitutional sense of the term. We are therefore of opinion that this contention is without merit.

A careful examination of the record satisfies us that it contains no reversible error. The judgment of the district court is

AFFIRMED.

HAMER, J., not sitting.