[S. F. No. 17140. In Bank. Apr. 27, 1945.]

A. A. SEKT, Petitioner, v. JUSTICE'S COURT OF SAN RAFAEL TOWNSHIP, Respondent.

Leo R. Friedman for Petitioner.

Harold Jos. Haley, District Attorney (Marin), and Thomas P. Boyd, Deputy District Attorney, for Respondent.

PETERS, J. pro tem.—A. A. Sekt petitions for a writ of prohibition to restrain the Justice's Court of San Rafael township from carrying into effect a judgment and sentence imposed by it on petitioner. It is his contention that before the judgment against him became final the law under which he was convicted was repealed, with the result, so he urges, that there is no law under which he now may be lawfully imprisoned.

In February of 1943 petitioner and one Phillip Webster were charged by complaint with the misdemeanor of having violated section 182 of the Penal Code (conspiracy to commit a crime), in that in January of 1943 they conspired to violate section 153 of the Penal Code, prohibiting the compounding of crimes. The complaint charged that petitioner and Webster conspired to take money from Albert Tognoli and Robert Powers upon an agreement that petitioner and Webster would compound the crimes of assault and battery and disturbing the peace committed by Tognoli and Powers in January, 1943,

abstain from prosecuting the charges, and withhold evidence concerning them.

Petitioner was tried on this charge in March of 1943, found guilty, and judgment entered on the verdict. He appealed, and was released on bail. In September of 1944 the superior court affirmed the judgment of conviction. While this appeal was pending the Legislature amended section 182 of the Penal Code, the effective date of the amendment being August 4, 1943. Prior to this amendment section 182 provided that a conspiracy of the type here charged should be punished as is provided for the punishment of the crime that the accused conspired to commit. Inasmuch as section 153 of the Penal Code provides that the compounding of the crime here involved is a misdemeanor, under section 182, as it read prior to the amendment, the crime of conspiracy charged was a misdemeanor. By the 1943 amendment the Legislature in no way changed the constituent elements of the crime of conspiracy, but it did change the maximum punishment, by providing that conspiracies of the type here involved ''shall be punishable by imprisonment in the county jail for not more than one year, or in the State prison for not more than three years, or by a fine not exceeding five thousand dollars ($5,000) or both.

''All cases of conspiracy may be prosecuted and tried in the superior court. . . .''

Thus at the time this crime was committed and at the time of trial the offense charged was a misdemeanor, prosecution was instituted by the filing of a complaint, and it was triable in the justice's court. By the amendment the degree of the crime was changed to either a misdemeanor or felony, dependent upon the punishment imposed, and became triable in the superior court upon the filing of an indictment or information. The amendment to section 182 contained no express saving clause.

It is the theory of petitioner that where a criminal statute is repealed without a saving clause all proceedings against an accused not reduced to final judgment are terminated at the instant of repeal; that the 1943 amendment to section 182 changing the grade of the offense operated as a repeal of the section as it read prior to the amendment; that there is no general or specific saving clause that continued section 182 in force after its repeal; that as a result the respondent court

has no power to carry into effect or enforce its judgment. The respondent argues that in the instant case there was not the type of repeal that compels the conclusion that such amendment operated so as to prevent the punishment of crimes committed before the amendment but not reduced to final judgment at the time of the amendment, and that, even if the amendment should be construed as a repeal of this type, there is a general saving clause in this state in section 9608 of the Government Code, formerly section 329 of the Political Code.

Section 9608 of the Government Code provides: "The termination or suspension (by whatsoever means effected) of any law creating a criminal offense does not constitute a bar to the indictment or information and punishment of an act already committed in violation of the law so terminated or suspended, unless the intention to bar such indictment or information and punishment is expressly declared by an applicable provision of law."

Statutes of similar import have been passed in many states to avoid the strict common-law rule that the repeal of criminal statutes terminates all pending prosecutions not reduced to final judgment, so that under the common-law rule such past offenders, although guilty of criminal offenses, are not punishable. (See, generally, 50 Am.Jur. § 573, p. 571; 22 C.J.S. § 27, p. 81.) The forerunner of section 9608 of the Government Code is to be found in Laws of California 1850-1853, page 920, passed in 1853. It provided: "That the repeal of any law creating a criminal offence, shall not be held to constitute a bar to the indictment and punishment of a crime already committed in violation of the law so repealed, unless the intention to bar such indictment and punishment is expressly declared in the repealing act." This statute was properly interpreted to be a repudiation of the common-law rule mentioned above, and under it, it was consistently held despite the repeal of a criminal statute making violation of it a felony that offenses against such statute occurring during the period it was in effect remained punishable after such repeal. (*People* v. *Quinn*, 18 Cal. 122; *People* v. *Barbour*, 9 Cal. 230; *People* v. *McNulty*, 93 Cal. 427 [26 P. 597, 29 P. 61].)

In 1872 the provisions of the 1853 statute were substantially embodied in section 329 of the Political Code. It will be noted that under the 1853 statute and under section 329

of the Political Code as enacted in 1872 it was provided that the repeal of a criminal statute does not "constitute a bar to the indictment and punishment" of an act already committed. By the use of the word "indictment" it is obvious that only the more serious prosecutions were saved and that ordinary misdemeanor prosecutions prosecuted by complaint were not. The law at the time made a strict distinction between prosecutions of major and minor offenses. Section 177 of the Criminal Practice Act of 1850-1851 then provided that prosecutions in the district and session courts must be prosecuted by indictments, while section 608 of that act provided that all criminal prosecutions in the justices' and other inferior courts must be commenced by complaint. Substantially these same sections were embodied into the Penal Code in 1872 in sections 888 and 1426.

Until the adoption of the present Constitution in 1879 there was no constitutional authority for the prosecution of major criminal offenses by information. Article I, section 8, of that Constitution, as then adopted, provides that "Offenses heretofore required to be prosecuted by indictment shall be prosecuted by information, after examination and commitment by a magistrate, or by indictment, with or without such examination and commitment, as may be prescribed by law." Thus, for the first time, the Legislature was empowered to adopt a procedure by which one could be prosecuted by information in the superior courts. In a case decided in 1880 it was held that section 329 of the Political Code as adopted in 1872 did not save prosecutions instituted by information, that is, that the word "indictment" in section 329 of the Political Code did not include "information." (*People* v. *Tisdale,* 57 Cal. 104.) The facts of that case were that in May of 1880 the defendant was charged by information with a felony alleged to have been committed in December, 1879. After the offense had been committed but before the information was presented the statute involved was amended by reducing the offense from a felony to a misdemeanor. After the effective date of the amendment the information was presented charging a felony. In addition, when the crime was committed it could only have been prosecuted by indictment, but in April of 1880, the Legislature, pursuant to the constitutional provision above referred to, provided for informations as well. The trial court sustained a demurrer and the People appealed, contending that section

329 permitted prosecution under the old statute by the new procedure. The court held that section 329 only saved offenses prosecuted by "indictment"; that "indictment" did not include "information"; that section 329 did not operate as a saving clause for any act prosecuted by information, and that an act which could only be prosecuted by indictment when committed could not be prosecuted by a new procedure such as information set up after the commission of the act. The court expressly refrained from passing on the question as to whether the defendant could have been prosecuted under the amended statute reducing the degree of the crime.

As a result of this decision section 329 was amended in 1881, the very next session of the Legislature following the decision. The statute as then amended, and as it read until 1943 when the Government Code was adopted, provided: "The repeal of any law creating a criminal offense does not constitute a *bar to the indictment or information* and punishment of an act already committed in violation of the law so repealed, unless the intention to bar such *indictment or information* and punishment is expressly declared in the repealing Act." (Italics added.) Thus, since this amendment, the saving clause clearly applies to all offenses prosecuted by indictment or information. ■ The theory of petitioner is that if the word "indictment" does not include "information," as was held in the Tisdale case, then the words "indictment or information" cannot properly be held to include "complaint." This conclusion does not inevitably follow. The word "indictment" has had a long legal history, and clearly does not include "information," or "complaint." The two are clearly distinct. But the term "information" has a much broader meaning. At common law every offense of less grade than a felony might be prosecuted by information. (*Hurtado* v. *California*, 110 U.S. 516 [4 S.Ct. 111, 28 L.Ed. 232].) In other words, long before the adoption of the constitutional provision of 1879 misdemeanors could be prosecuted by information. All that the constitutional provision did was to extend the use of informations to capital and other serious offenses. (See 14 Cal.Jur. § 5, p. 8.) While it is true that as a result of the provision the term "information" is now usually connected with serious offenses, and not usually thought of as applicable to inferior court prosecutions, the Penal Code sometimes uses the word "information" in its broadest sense. Chapter III of that code, including sections

806 through 810, is headed "The Information." The very first section of that chapter—section 806—defines the "complaint" as "the allegation in writing made to a court or magistrate that a person has been guilty of some designated offense." The section goes on to provide that complaints "wherever applicable, shall be construed and shall have substantially the same effect as provided in this code for indictments and informations." There is substantial authority to the effect that the term "information" as used in a statute includes "complaint," and vice versa. (*State* v. *Woolworth,* 148 Kan. 180 [81 P.2d 43]; *State* v. *Stafford,* 26 Idaho 381 [143 P. 528]; *Evans* v. *Willis,* 22 Okla. 310 [97 P. 1047, 18 Ann.Cas. 258, 19 L.R.A.N.S. 1050]; *Newton* v. *People,* 72 Ill. 507; *State* v. *Ritzler,* 17 Ohio App. 394; *Ex parte Cheatham,* 50 Tex.Crim. 51 [95 S.W. 1077].)

These cases are authority for holding that included within the word "information" are all misdemeanor prosecutions. It is not at all inconceivable that the Legislature, when it amended section 329 in 1881, intended to save all criminal prosecutions, and used the word "information" in its generic rather than in its technical sense. Certainly a liberal construction of the statute would lead to this result, and there is some authority that the section should be liberally construed. (*People* v. *McNulty,* 93 Cal. 427 [26 P. 597, 29 P. 61].) Section 4 of the Political Code (in which code § 329 is to be found) provides that "The rule of the common law that statutes in derogation thereof are to be strictly construed, has no application to this code. The code establishes the law of this state respecting the subjects to which it relates, and its provisions and all proceedings under it are to be liberally construed, with a view to effect its objects and to promote justice." And section 4 of the Penal Code provides that: "The rule of the common law, that penal statutes are to be strictly construed, has no application to this code. All its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice."

■ However, whether or not the term "information" in section 329 includes misdemeanor prosecutions in the inferior courts, we think there is another and completely independent ground that supports the conclusion that the offense committed by petitioner may be punished under the law as

it existed when the offense was committed, and that is, that the amendment of section 182 of the Penal Code was not of a repeal of the type to bring into operation the common-law rule that the repeal of a criminal statute, without a saving clause, operates to terminate all pending prosecutions.

It was undoubtedly the rule at common law, and it is the rule in this and other states, that the outright repeal of a criminal statute without a saving clause bars prosecution for violations of the statute committed before the repeal. This rule was stated as follows in *Spears* v. *County of Modoc*, 101 Cal. 303, 305 [35 P. 869] : ". . . it may be regarded as an established rule that the repeal of a penal statute without any saving clause has the effect to deprive the court in which any prosecution under the statute is pending of all power to proceed further in the matter. . . . The proceeding is arrested at the very point where it is at the date of the repeal; if before indictment no indictment can be found; if after indictment, and before trial, no conviction can be had; if after conviction and before judgment, no judgment can be rendered. If the judgment is appealed from, and its enforcement is suspended until the determination of the appeal, the power to enforce the judgment falls with the repeal of the statute, and the appellate court will direct a dismissal of the proceedings. Until the determination of the appeal, the proceeding is pending in court, and the judgment does not become final until affirmed by the appellate court. If, during the interim, the legislature repeals the statute under which the prosecution is had it operates as a discharge of the defendant. 'The repeal of the law imposing the penalty is of itself a remission.' Per Taney, C. J., *State* v. *R. R. Co.*, [*Stimpson* v. *Westchester R. R. Co.*] 3 How. 552 [11 L.Ed. 722]." (See, also, *People* v. *De Ferrari*, 63 Cal.App. 671 [219 P. 1048].)

This rule is well settled at common law and is accepted by most American jurisdictions. It is based on presumed legislative intent, it being presumed that the repeal was intended as an implied legislative pardon for past acts. (See discussion, 22 C.J.S. § 27, p. 81.) This rule results, of course, in permitting a person who has admittedly committed a crime to go free, it being assumed that the Legislature, by repealing the law making the act a crime, did not desire anyone in the future whose conviction had not been reduced to final judgment to be punished under it. But this rule only applies in

its full force where there is an outright repeal, and where there is no other new or old law under which the offender may be punished. There are at least three situations to which the above rule, according to the great weight of authority, does not apply.

█ 1. Where the statute passed after the offense is committed but before final judgment mitigates rather than increases the punishment. In such a case the problem is not complicated by the prohibition against *ex post facto* laws, since it is well settled that beneficial legislation is not within the prohibition of the constitutional provision. (*Malloy* v. *South Carolina*, 237 U.S. 180 [35 S.Ct. 507, 59 L.Ed. 905].) Where the later statute reduces the punishment the cases quite uniformly hold that the offender may be punished under the new law, and that the repeal by amendment of the old punishment does not operate to free the offender from all punishment. (*State* v. *Williams*, 2 Rich.Law (S.C.) 418 [45 Am.Dec. 741], citing *The King* v. *Mary Lewis*, 2 Eng. Crim. Cases 373; *People* v. *Hayes*, 140 N.Y. 484 [35 N.E. 951, 37 Am.St.Rep. 572, 23 L.R.A. 830]; *Hernandez* v. *State*, 43 Ariz. 442 [32 P.2d 25]; *Woo Dak San* v. *State*, 36 N.M. 53 [7 P.2d 940]; *State* v. *Jones*, 200 La. 808 [9 So.2d 42]; *Malloy* v. *South Carolina*, 237 U.S. 180 [35 S.Ct. 507, 59 L.Ed. 905].) All these cases, and the cases cited in them, base their conclusion that the offender who commits an offense before the amendment of the statute imposing the lighter sentence gets the benefit of the lighter punishment, upon the ground that it must have been the intention of the Legislature that the offender should be punished, and, since he can be constitutionally punished under the new statute, that should be done. This is, of course, the converse of the situation presented in the instant case where the later statute increased the maximum punishment, but it should here be mentioned that it would be anomalous indeed to hold that where the punishment is mitigated the offender before the enactment gets the lighter sentence, but is nevertheless punished, and then to hold that when the amendatory act increases the punishment the prior offender is entirely exonerated, and all this on the basis of presumed legislative intent. Reason and logic compel the conclusion that, since the problem involves the determination of the legislative intent, where the Legislature increases the punishment it could not possibly have intended to exonerate past

offenders. Since legislative intent is the test there would be far more reason to let offenders off entirely where the punishment is lightened than where it is increased.

■ 2. The second well-settled exception is that repeals by implication are not favored, and where a new statute is passed in a field already occupied by an older statute, the new statute will not be held to have repealed by implication the old statute as to crimes already committed at the time the new statute is passed. As to such crimes the offender will be punished under the old law and the new law will be held to be prospective in operation. This exception is based upon the presumed intent of the Legislature. (See many cases collected and commented upon in majority and dissenting opinions in *People* v. *Lowell,* 250 Mich. 349 [230 N.W. 202]—both opinions approving this rule.)

■ 3. The third well-settled exception is that where there is an outright repeal and a substantial reenactment, it will be presumed that the Legislature did not intend that there should be a remission of crimes not reduced to final judgment. This rule was stated as follows in *Sobey* v. *Molony,* 40 Cal.App. 2d 381, 385 [104 P.2d 868] : ''When a statute, although new in form, re-enacts an older statute without substantial change, even though it repeals the older statute, the new statute is but a continuation of the old. There is no break in the continuous operation of the old statute, and no abatement of any of the legal consequences of acts done under the old statute. Especially does this rule apply to the consolidation, revision, or codification of statutes, because, obviously, in such event the intent of the Legislature is to secure clarification, a new arrangement of clauses, and to delete superseded provisions, and not to affect the continuous operation of the law.

''This is the rule of decision in California and in the other states, even in the absence of legislative declaration. The cases have clearly established the rule that such restatement, without substantial change, neutralizes any repeal, express or implied. No saving clause or other expression of legislative intent is necessary to accomplish this result. The intent is derived from the fact and purpose of a restatement without change. (*Estate of Martin,* 153 Cal. 225 [94 P. 1053] ; *Perkins Mfg. Co.* v. *Clinton Const. Co.,* 211 Cal. 228 [295 P. 1, 75 A.L.R. 439] ; *Chambers* v. *Davis,* 131 Cal.App. 500 [22 P.2d 27] ; *Gastineau* v. *Meyer,* 131 Cal.App. 611 [22 P.2d 311].) The

cases from other jurisdictions are in complete accord. They are so numerous and so completely in harmony that their enumeration is not necessary. Many of them are collected and referred to in 59 Corpus Juris, page 1058, section 624.

"This rule of construction, based as it is on the presumed legislative intent, applies whether the subject of the statute is civil or criminal law. It is well-settled that, independently of a saving clause, a person may lawfully be prosecuted, under a repealed and re-enacted statute, for a crime committed prior to the date of the re-enactment. (Lewis' Sutherland Statutory Construction, 2d ed., vol. 1, p. 445, § 238; Black on Interpretation of Laws, 2d ed., p. 421, §§ 124, 125; *State* v. *Gumber*, 37 Wis. 298; *State* v. *Ware*, 79 Or. 367 [154 P. 905, 155 P. 364]; *State* v. *Wish*, 15 Neb. 448 [19 N.W. 686]; *Bauer* v. *State*, 99 Neb. 747 [157 N.W. 968]; *State* v. *Brewer*, 22 La. Ann. 273; *Borough of Langhorne Manor* v. *Clayton*, 129 Pa. Super. 557 [196 A. 584]; see, also, *Board of Dental Examiners* v. *Lazzell*, 172 Md. 314 [191 A. 240].)"

 This brings us to the exact situation here present— the legal effect of an amendatory act increasing the punishment. On this precise problem there is a conflict of authority. There is substantial authority to the effect that such an amendment repeals the old law and acts as a remission of all offenses not reduced to final judgment. (See many cases collected and discussed in *People* v. *Lowell*, 250 Mich. 349 [230 N.W. 202]; *Commonwealth* v. *McDonough*, 95 Mass. 581; *Wilson* v. *Ohio & Mississippi Railroad Co.*, 64 Ill. 542 [16 Am.Rep. 565]; *Lindzey* v. *State*, 65 Miss. 542 [5 So. 99, 7 Am.St.Rep. 674]; see, generally, 31 Halsbury's Laws of England, p. 527, § 688.) In practically all these cases the courts expressed great reluctance in exonerating the offender, but apparently felt that the basic common-law rule, above referred to, compelled such result.

There is substantial and well-reasoned authority to the effect that where the later statute increases the punishment the Legislature has clearly demonstrated its intent that the act should be punished, and since the offender cannot be punished under the new law because of the *ex post facto* provision of the Constitution, he will be held under the old law. It is presumed from the very purpose of the amendment that the Legislature intended that all offenders should be punished, and a saving clause is implied. (*State* v. *Broadway*, 157 N.C. 598

[72 S.E. 987]; *State* v. *Perkins,* 141 N.C. 797 [53 S.E. 735, 9 L.R.A.N.S 165]; *Murphy* v. *Commonwealth,* 172 Mass. 264 [52 N.E. 505, 70 Am.St.Rep. 266, 43 L.R.A. 154]; *State* v. *Fisher,* —— W.Va. —— [27 S.E.2d 581]; *Davis* v. *State,* 142 Tex.Crim. 602 [155 S.W.2d 801]; *People* v. *Miller,* 169 Misc. 709 [8 N.Y.S.2d 53]; *Teague* v. *Commonwealth,* 172 Ky. 665 [189 S.W. 908, L.R.A. 1917B 738]; *Ong Chang Wing* v. *United States,* 218 U.S. 272 [31 S.Ct. 15, 54 L.Ed. 1040]; see on the entire subject annotation, 55 A.L.R. 443.)

The reasoning of these cases is that there is no constitutional prohibition against making the old statute applicable to offenses committed before its amendment (*Ong Chang Wing* v. *United States,* 218 U.S. 272 [31 S.Ct. 15, 54 L.Ed. 1040]); that whether the old law has been repealed or is saved for past offenders depends upon legislative intent; that by increasing the punishment the Legislature has clearly indicated that it intended that particular offense to be punished; that to hold that the amendment operates to remit offenses not reduced to final judgment is technical and clearly violative of the legislative intent.

The reasoning of these cases is most persuasive. The basic common-law rule that the outright repeal of a criminal statute acts as a remission of all crimes not reduced to final judgment, is sound, and is based on what obviously must have been the intent of the Legislature. Where the Legislature has seen fit to repeal a statute making certain acts a crime it is reasonable to assume that in the absence of a saving clause the Legislature would not have desired that anyone should be punished for what, by the repeal, it has now determined is not a crime. The cases that hold that this rule must be applied where by amendment the punishment has been increased, do so by blindly applying the common-law rule to a situation where the reason for the rule does not exist. Where the reason for the rule ceases the rule should not apply. This has been recognized by those courts that have adopted the three exceptions to the general rule outlined above. In the situations there involved it would obviously violate the legislative intent to refuse to punish acts admittedly criminal in nature when committed. The reasoning of these cases applies with even more compelling force to a situation where the amendment increases the punishment. In such a case, where the Legislature has seen fit to increase the punishment, it certainly cannot be argued

that it intended to pardon and forgive those who had violated the less drastic statute. In such a situation the only reasonable assumption is that the Legislature intended the new punishment to be prospective in its operation and to apply only to offenses committed after its passage, but that the old law should apply to offenses committed before the effective date of the amendment. If there is no remission where the amendment mitigates the punishment, if there is no implied repeal where the new law operates in a field already occupied with an older inconsistent law, and if no remission takes place where there is an outright repeal and a substantial reenactment—and these exceptions are well-settled—how much more reason exists for holding that there is no implied pardon where the later statute increases the punishment.

In the instant case when petitioner committed the acts here challenged he violated the law. What he then did is now a violation of the law. Conspiracy is still a crime. The constituent elements of the crime have never been changed. At all times—at the time of the commission of the offense, at the time of trial, at the time the appeal was decided, and right up to the present moment—conspiracy has constituted a violation of the provisions of the Penal Code. In fact, the Legislature has now determined that a conspiracy to commit a misdemeanor of the type here involved is so serious an offense that it should be punished in some cases as a felony. To hold in such a case that by such an amendment increasing the possible punishment the Legislature intended to pardon and to forgive all offenses committed before the amendment where prosecutions were pending at the date of the amendment is to ascribe to the Legislature an intent that the very purpose of the amendment demonstrates could not have existed. Can it reasonably be argued that by amending the statute by increasing the punishment the Legislature intended that until the new statute took effect the crime of conspiracy could be committed with impunity? That is the practical result of the construction contended for by petitioner. Amendments to existing law take effect ninety days after the adjournment of the Legislature. It would be practically impossible to apprehend, try and convict, an offender and to determine his appeal during the ninety-day period. The result would be that the crime of conspiracy could be committed with absolute impunity during such period, and this in the face of the fact that

at all times involved the Legislature had determined that conspiracy was a most serious crime. The very nature of the situation compels the conclusion that the Legislature must have intended that the amendment should operate prospectively, and that as to past offenders they should be punished under the old law. To imply a saving clause in such a situation is simply to give effect to the obvious intent of the Legislature.

The alternative writ heretofore issued is discharged and the petition for a peremptory writ of prohibition is denied.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.