## EX PARTE E. C. KINSLOE.

No. 19364. Delivered April 13, 1938.

The opinion states the case.

*Nass & Bitter,* of San Antonio, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—This is an appeal from an order of the district court of Bexar County declining to discharge relator under a writ of habeas corpus. The record shows that relator was arrested and held by virtue of an executive warrant issued by the acting Governor of this State upon a requisition from the Governor of the State of Oklahoma and was based upon the following papers which were certified as authentic, and which accompanied the demand upon the Governor of this State.

"The State of Oklahoma, Plaintiff, vs. Joseph Allen Eckler, alias F. J. Haller, alias R. E. Parks, and Jim Kinsloe, Defendant.

"PRELIMINARY INFORMATION.

"In the name and by the authority of the State of Oklahoma, comes now Lewis R. Morris, the duly qualified and acting County Attorney in and for Oklahoma County, State of Oklahoma, and on his official oath gives the Justice Court in and for said Oklahoma County and State of Oklahoma, to know and be informed that heretofore, to-wit: on the 27th day of July, A. D. 1937, in Oklahoma County, State of Oklahoma, Joseph Allen Eckler, alias F. J. Haller, alias R. E. Parks, and Jim Kinsloe, whose more full and correct names is to your informant unknown then and there being, did then and there wilfully, unlawfully and feloniously commit the crime of FORGERY IN THE SECOND DEGREE, in the manner and form as follows, to-wit:

"That is to say, the said defendants in the county and state aforesaid, and on the day and year aforesaid, then and there being, did then and there wilfully, unlawfully and feloniously sell, utter, exchange and deliver to R. E. Stephens for a valuable consideration a forged and counterfeited check of the tenor, purport and effect following:

" 'TO THE CHICAGO CITY BANK AND TRUST CO.      No. 3057
THE GENERAL TOOL CO.          Chicago, Ill. July 23, 1937.
PAY the sum of —Twenty-five Dollars and 00— $25.00
To the order of F. J. Haller
                      " 'By (signed) R. E. Parks, Auditor.'
"endorsed on the back: F. J. Haller

"with the felonious intent to have the same uttered and passed as true and genuine and he the said defendant knew that said check was forged and counterfeited, the name of R. E. Parks signed to said check being in truth and in fact a forgery and not the true signature of said R. E. Parks and not done with his knowledge and consent, said signature being that of a fictitious person, contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the State of Oklahoma.

                      "LEWIS R. MORRIS,
                          "County Attorney, Oklahoma County.
                      "By WALTER MARLIN
                          "Assistant County Attorney.

"STATE OF OKLAHOMA, OKLAHOMA COUNTY, ss.:
    "I, John Butler, being duly sworn on my oath, declare that the statements set forth in the above information are true.
                      "(Signed)  John  Butler.
"Subscribed and sworn to before me this 30th day of July, 1937.
                      "(Signed)  Ben LaFon,
                          "Justice of the Peace."

    "THE STATE OF OKLAHOMA, OKLAHOMA COUNTY, ss.:
    "The affiant, John Butler, being duly sworn, deposes and says:
    "That the said Jim Kinsloe, charged with the crime of FORGERY IN THE SECOND DEGREE is a fugitive from justice of this State, and is now in the State on whose executive the demand is requested to be made, and that the application is made in good faith for the punishment of crime, and not for the purpose of collecting a debt, or pecuniary mulct, or of recovering the alleged fugitive to a foreign jurisdiction with a view to there serve him with civil process, or for any private purpose; that this affiant will not, directly, or indirectly, use the same for any

of said purposes; *that this affiant has actual knowledge of the facts constituting the offense, which are as follows:*

"That on the 27th day of July, 1937, the said defendant, Jim Kinsloe, did then and there unlawfully, wilfully and feloniously sell, utter, exchange and deliver to R. E. Stephens for a valuable consideration a forged and counterfeited check of the tenor, purport and effect following:

" 'To The Chicago City Bank & Trust Co.        No. 3057
    THE GENERAL TOOL CO.        Chicago, Ill. July 23, 1937.
    Pay the sum of Twenty-five dollars and 00—$25.00
    To the order of        (Signed) R. E. Parks, Auditor.
    F. J. Haller'
"endorsed on back F. J. Haller

"with the felonious intent to have the same uttered and passed as true and genuine and he the said defendant knew that said check was forged and counterfeited, the name of R. E. Parks signed to said check being in truth and in fact a forgery and not the true signature of said R. E. Parks, and not done with his knowledge and consent, said signature being that of a fictitious person;

"That at all times after said date, the said defendant, Jim Kinsloe, has been out of and absent from the State of Oklahoma, and from said last herein stated date has continued to remain out of and absent from the State of Oklahoma, and is now absent from and outside of the State of Oklahoma.

                            "(Signed) John Butler.
"Subscribed and sworn to before me this 4th day of August, 1937.
                            "(Signed) Ben Arnold
                            "Judge of the Thirteenth Judicial
                            District of Oklahoma.
"Attest: Cliff Myers
    "Cliff Myers,—Court Clerk
    "By Alva Bell, Deputy."

The requisition demand named John Butler as the agent to whom relator should be delivered for return to Oklahoma, and the extradition warrant of the Governor of this State so directed.

Relator contends that the affidavit attached to the "Preliminary Information" is not such an affidavit as is contemplated by the statute of the United States requiring the charge of crime in the demanding State to be by indictment or affidavit, and therefore, that the charge in the demanding State was by information alone, which would not support a requisition demand. It is not an open question that a charge by information alone will not authorize requisition proceedings, and that the Gover-

nor of the asylum State would not be authorized to issue his extradition warrant if the demand or papers accompanying it exhibit such fact. Appellant's contention here, however, can not be sustained. The affidavit attached to the information declares in positive terms that "the statements set forth in the above information are true."

At the habeas corpus hearing relator called John Butler as a witness, who testified that he was from Oklahoma City, Oklahoma, and employed as a detective in the police department; that he was the person who had been named in the requisition proceedings to return relator to the State of Oklahoma; that he had never seen relator in Oklahoma nor in R. E. Stephens' place of business there, and never saw relator give or deliver any papers or instrument to Mr. Stephens; that witness had signed Exhibits 3 and 4, and that as a city detective of Oklahoma City he had prior to instituting the charge against relator made an investigation of the charge and interviewed witnesses.

The only question which has given us concern arises from the testimony of Mr. Butler. The conclusion may be drawn therefrom that while his affidavits to the information and the "fugitive affidavit" are positive in terms he based same upon information gathered in the course of his investigation as an officer. The exact point thus presented is, may an affidavit positive in terms, being sufficient to support the action of the Governor of both the demanding and asylum States, be impeached in the courts of the asylum State upon habeas corpus proceedings? We have examined many authorities in the investigation of the question, both from our own State and others. The rule seems to be universal that if it appears from the *face of the requisition papers* that the affidavit charging one with crime was based on information and belief only, the courts would discharge one sought to be extradited on such an affidavit. See Ex parte Cheatham, 50 Texas Crim. Rep. 51; Ex parte Rowland, 35 Texas Crim. Rep. 108; Ex parte Baker, 43 Texas Crim. Rep. 280, 65 S. W. 91; Ex parte Hart, 63 Fed. Rep. 249; 25 Corpus Juris, page 264, with many cases cited under Note 64. That the courts of the asylum State, in habeas corpus proceedings to review the acts of the Governor who may have issued an extradition warrant, may go so far as above indicated seems settled. The case of State of Tenn. v. Jackson, 36 Fed. Rep. 258, might at first glance appear to go further. The habeas corpus proceeding there, however, was not in the court of the asylum State. Jackson lived in Illinois and had been extradited to Tennessee, and he sought release by habeas corpus after his return to the demanding State in the court of that jurisdiction.

We find expressions in many opinions which intimate strongly that the courts may not go beyond "the face of the papers" to determine whether an accused is properly charged with crime in the demanding State, among them being Roberts v. Reilly, 116 U. S. 80.

Opinions from other courts frequently cite the case last mentioned and quote therefrom the following: "It must appear, therefore, to the Governor of the State to whom such a demand [requisition] is presented, before he can lawfully comply with it: first, that the person demanded is substantially charged with a crime against the laws of the State from whose justice he is alleged to have fled, by an indictment or an affidavit, certified as authentic by the Governor of the State making the demand; and second, that the person demanded is a fugitive from the justice of the State the executive authority of which makes the demand. *The first of these prerequisites is a question of law and is always open upon the face of the papers to judicial inquiry,* on an application for a discharge under a writ of habeas corpus. The second is a question of fact, which the Governor of the State upon whom the demand is made must decide, upon such evidence as he may deem satisfactory."

While the opinion does not say that in determining the first proposition the courts may not go beyond the "face of the papers" the intimation to that effect is a reasonable deduction. In Biddinger v. Commissioner of Police, 245 U. S. 128, 62 L. Ed. 193, it appears from the opinion delivered by Mr. Justice CLARKE of the Supreme Court of the United States that the case turned upon the exclusion of evidence offered by the accused as tending to show that he was not a fugitive from justice. In the course of the opinion it was said that the scope and limits of the hearing on habeas corpus in such cases had not been and perhaps should not be determined with precision. After citing a number of opinions from the Supreme Court of the United States, including Roberts v. Reilly (supra), this very emphatic language is used by the court: "This much, however, the decisions of this court make clear; that the proceeding is a summary one, to be kept within narrow bounds; not less for the protection of the liberty of the citizen than in the public interest; *that when the extradition papers required by the statute are in the proper form the only evidence sanctioned by this court as admissible on such a hearing is such as tends to prove that the accused was not in the demanding State at the time the crime is alleged to have been committed;* * * *."

Other cases bearing upon the subject are In re Palmer, 100 N. W. 996; In re Waterman, 89 Pac. 291, L. R. A. Vol. 11

(N. S.), 424; Thatcher's Requisition, 18 Pa. Sup. Ct. 533; Watts v. Splain, U. S. Marshal, 277 Fed. 335; Compton v. Alabama, 214 U. S. 1.

In a rather extensive investigation of the question we have discovered only three cases where the effort to impeach the affidavit charging crime in the demanding State was considered, two of them being cited in Church on Habeas Corpus (2d ed.), under the following text, at page 836: "The alleged fugitive can not, on habeas corpus, impeach the validity of the affidavit upon which the requisition is based, if it distinctly charge the commission of an offense against the laws of the demanding State or Territory; because the only question left for consideration is the one of authenticity, and the Governor of such State or Territory is the only proper judge of the authenticity of the affidavit where it appears to have been made before a magistrate. A court will not, on habeas corpus, inquire into the question as to whether the affidavit is a forgery."

One of the cases cited by CHURCH is Ex parte Manchester, 5 Calif. 237. There a request for requisition was based upon an affidavit made before a magistrate in the State of Ohio. Upon a habeas corpus proceeding evidence was heard by Chief Justice MURRAY of the Supreme Court of California, who also wrote the opinion for the court. It was the contention of relator that the affidavit upon which the request for requisition was based was a forgery. We quote from the opinion: "But it was contended before me, that the whole paper [the affidavit] was a forgery, because the name of Franks seems to have been written by the same person who wrote the body of the instrument and it is interlined in various parts in the same handwriting, but with different ink. Some testimony was adduced to prove this fact, which did not satisfy my mind, *and which ought not to have been admitted,* because the Governor of Ohio is the only proper judge of the authenticity of the paper and we can not go behind his action to inquire whether the affidavit was a forgery."

The other case cited under the text from Church on Habeas Corpus is Kurtz v. State, 22 Fla. 36, 1 Am. St. Rep. 173. Kurtz was taken into custody upon an extradition warrant issued by the Governor of Florida upon a requisition demand from the Governor of New York. Upon habeas corpus hearing Kurtz was remanded, and appealed to the Supreme Court of Florida. In the course of the opinion it was said: "Either the original affidavit, or a copy of an affidavit * * * certified by the Governor of the State from which the fugitive had fled as authentic, would be sufficient to authorize the action of the Governor of the State where the fugitive was found. *Such a certification*

*would place its genuineness beyond dispute.* The fugitive from justice can not, on habeas corpus, impeach the *validity of the affidavit upon which the requistion was founded,* if it distinctly charge the commission of an offense. Church on Habeas Corpus, Sec. 476. The Governor of the State issuing the requisition for the fugitive is the only proper judge of the authenticity of the affidavit, and when the requisition certifies that the affidavit 'is duly authenticated according to the laws of said State' it is sufficient. In re Manchester, 5 Calif. 237; Church on Habeas Corpus, Sec. 479." Further on in the opinion it is said, speaking of the extent to which the courts may go in habeas corpus proceedings: *"Their judicial powers are limited to a determination on the sufficiency of the papers and the identity of the prisoner."*

The only other authority bearing directly on the attempted impeachment of an affidavit upon which a requisition demand was based is the case of Riley v. Colpoys, U. S. Marshal, 85 Fed. (2d) 282, decided in 1936.

In June, 1930, one Holland filed before a magistrate in the State of Michigan a complaint under oath charging that Riley, together with other named persons, was guilty of false imprisonment of Charles Maetler. Said affidavit was in positive terms. Riley was not immediately apprehended. Five years later the same Holland made an affidavit that Riley was a fugitive from justice, and was in the District of Columbia.

A writ of requisition was issued by the Governor of Michigan and an extradition warrant issued by proper authorities in the District of Columbia, upon which Riley was taken into custody. He sought discharge upon a writ of habeas corpus, alleging "that the warrant of arrest under which he was held was illegal and void for the reason that the affidavit in support of the complaint upon which the requisition was issued did not state facts sufficient to justify the issuance of the warrant because the affidavit made by affiant Holland in support of the complaint did not state facts within his personal knowledge, but upon information only."

The United States Court of Appeals for the District of Columbia said the affidavit made by Holland in support of the complaint in 1930 was absolute and unconditional in form and that nothing in the complaint or the oath supporting it indicated that it was made upon information only. It appeared from the fugitive affidavit made five years later by Holland that he had signed the original complaint upon information which he had received acting as an officer in the case; that the defendants were arrested, tried and convicted, except Riley and

one other; that before the issuance of the warrant in the case originally he had interviewed several witnesses who were produced at the trial, and that he had signed the complaint after having full information of the acts of the defendant therein. The court used the following language in the opinion remanding Riley: "We think that these facts justify the arrest of appellant in this jurisdiction and his extradition to the State of Michigan. *The affidavit made by Holland to the original complaint was unqualified and absolute in form and not made upon information and belief.*"

After citing authorities the court proceeded in this language: "Upon these authorities we conclude that the warrant of arrest was lawfully issued by the magistrate upon the filing of the first affidavit by Holland, and that the writ of requisition issued by the Governor of Michigan was thereby justified."

It will be observed that the facts in the case last cited are quite similar to those in the present case, about the only difference being that in the instant case the attempt to impeach the affidavit was by the oral testimony of the officer on the habeas corpus hearing, while in the last cited case the attempt at impeachment was by the fugitive affidavit of the officer.

The affidavit upon which the requisition of the Governor of Oklahoma was based and which accompanied the demand presented to the Governor of this State being positive in its terms, and sufficient on its face to show that relator was charged with an extraditable crime, the Governor was warranted in issuing the extradition writ. The trial court, under the authorities cited, properly remanded relator, thereby declining to permit the impeachment of the affidavit. It occurs to us that the precise question here presented was involved in an effort to go behind the affidavit for a search warrant which was positive in its terms. The effort was to show that the affiants in fact only had information upon which the affidavit was made, although the affidavit on its face did not so disclose. This Court held that the affidavit being sufficient on its face to authorize the magistrate to issue the search warrant, and sufficient to protect the officer in proceeding thereunder, it would not be permitted to invalidate the result of the search by impeaching the affidavit upon which the warrant issued. See Ware v. State, 110 Texas Crim. Rep. 95, 7 S. W. (2d) 551, where the reason for such holding is stated to be that any other rule would bring about confusion and disorder in determining the competency of the evidence procured under search warrants valid upon their faces and predicated upon affidavits sufficient to authorize the magistrate to issue the warrant. See also Dikes v. State, 120 Texas Crim.

Rep. 127, 48 S. W. (2d) 259, in which many cases following Ware (supra) are cited.

The judgment remanding relator is affirmed.