[Criminal No. 333.   Filed May 27, 1913.]

[132 Pac. 563.]

## STEPHEN LA PORTE, Appellant, v. STATE OF ARIZONA, Respondent.

1. CRIMINAL LAW — PUNISHMENT—STATUTES—REPEAL—SAVING CLAUSE. Under Penal Code of 1901, sections 174, 635, the penalty for murder in the second degree was imprisonment for not less than ten years or during life. Laws of 1909, chapter 101, provided that the trial court might impose a general sentence of imprisonment not to exceed the maximum term fixed by law, under which sentence the prisoner should not be released until he had served at least the minimum term. Section 3 of the same act made this indeterminate sentence discretionary. Laws of 1912, chapter 46, section 1, required the court to impose the indeterminate sentence in all felony cases, and expressly repealed all conflicting acts and parts of acts. Penal Code of 1901, sections 1310, 1311, contained a general saving clause for all penalties which are modified or repealed after the commission of offenses and before the trial. *Held,* that one guilty of murder in the second degree, under an indictment found in 1913, charging the crime in 1909, was properly sentenced under the law in force before the enactment of Laws of 1912, chapter 46, since the general saving clause operated to prevent a repeal by that act of the former law as to a crime committed before its enactment.

2. CONSTITUTIONAL LAW—EX POST FACTO LAW—CHANGE OF PENALTY.— Any additional or increased penalty provided for a crime after its commission is *ex post facto,* and in violation of constitution of the United States, article 1, section 9, and constitution, article 2, section 25.

3. STATUTES—CONSTRUCTION—PERMANENT LAWS.—Penal Code of 1901, sections 1310, 1311, prescribing a general saving clause for criminal statutes, are by their language permanent, general laws, and not temporary in their nature.

4. STATUTES—IMPLIED REPEAL—GENERAL SAVING CLAUSE.—The general saving statutes are not abrogated by Laws of 1907, chapter 10, sections 6, 7, declaring that in all cases provided for by a subsequent statute all statutes theretofore in force, whether consistent or not with the subsequent statute, shall be repealed unless expressly continued in force, and that the repeal of the statute does not revive a former statute theretofore repealed by it.

5. COURTS—JURISDICTION—TRANSFER OF CAUSES ON ADMISSION OF STATE. Where an offense is committed within the territory, which is admitted into the Union as a state before the indictment is found, the state court can take jurisdiction of the offense under section 33 of the enabling act of Congress (Act June 20, 1910, c. 310, 36 Stat. 578), and section 5, article 22, of the constitution, which provide that such an offense shall be prosecuted in the state court and are not in violation of any fundamental law.

APPEAL from a judgment of the Superior Court of the County of Pima. W. F. Cooper, Judge. Affirmed.

The facts are stated in the opinion.

Mr. W. J. Galbraith, for Appellant.

Mr. G. P. Bullard, Attorney General, Mr. George O. Hilzinger, County Attorney, and Mr. Leslie C. Hardy, Assistant to the Attorney General, for Respondent.

ROSS, J.—Appellant appeals from a judgment of conviction of murder in the second degree, and from an order overruling a motion in arrest of judgment. The indictment was found and returned on January 27, 1913, and alleged the commission of the offense in September, 1909. The sentence was for not less than ten nor more than fifty years, upon a plea of guilty of murder in the second degree.

The errors assigned are: (1) There is no law in existence under which judgment and sentence can be imposed; (2) the superior court of the state of Arizona is without jurisdiction in this particular case.

Under the first assignment of error appellant invokes the well-recognized rule that the law defining a crime and establishing its punishment must be valid and subsisting, both at the time of the commission of the offense and at the time of the trial, and that its failure at either time operates as a pardon of the offense, and entitles the prisoner to a discharge.

*Wharton* v. *State,* 5 Cold. (Tenn.) 1, 94 Am. Dec. 214. In
September, 1909, the date of the commission of the crime, the
penalty for murder in the second degree was not less than ten
years, or during the natural life of the person, or any number
of years not less than the minimum penalty. Secs. 174, 635,
Pen. Code, 1901. In 1909 the legislature passed an Indeter-
minate Sentence Law, effective March 18, 1909 (chapter 101,
p. 258, Laws 1909), which provided that the trial court, if it
deemed it right and proper, might in all felony cases, except
murder in the first degree, impose a general sentence of im-
prisonment not to exceed the maximum term, and then pro-
vided that the prisoner should be not released until he had
served at least the minimum term provided by law. Sec-
tion 3. A convicted person was not entitled as a matter of
right to be sentenced under this act. It was discretionary
with the court as to whether a determinate or indeterminate
sentence should be imposed, and the prisoner could not com-
plain whichever it was. Such was the law in September, 1909,
the date of the commission of the crime charged against ap-
pellant. Chapter 46, page 201, section 1, Laws of 1912,
Regular Session, takes from the court its discretion as to de-
terminate and indeterminate sentences, and makes it obliga-
tory upon the court to impose the indeterminate sentence in
all felony cases, except treason and murder in the first de-
gree. This act does not reduce the minimum nor increase
the maximum penalty as provided in sections 174 and 635,
*supra,* but requires that the sentence shall be for the period
of time between the extreme limits. Under it no definite
or determinate sentence may be imposed. It expressly repeals
all acts in conflict with it. Under the law prior to 1912 the
penalty, whether definite or indeterminate, might be less than
the maximum, but by chapter 46, *supra,* it must be the period
between the minimum and the maximum penalty prescribed,
and if the latter act had the effect of repealing the act of 1909,
there is no law authorizing the punishment of appellant.

Any additional or increased penalty prescribed for a crime
after its commission is *ex post facto,* and violates section 9,
article 1, of the federal constitution, and section 25, article
2 of our state constitution. *In re Medley,* 134 U. S. 160, 33
L. Ed. 835, 10 Sup. Ct. Rep. 384.

But it is the contention of respondent that there is a gen-
eral law in the Penal Code which operates as a saving clause,

thereby preventing the new legislation from repealing the penalties as fixed by the Laws of 1901 and 1909.

Sections 1310 and 1311 read as follows:

"1310. When the penalty for an offense is prescribed by one law and altered by a subsequent law, the penalty of such second law shall not be inflicted for a breach of the law committed before the second shall have taken effect. In every such case the offender shall be tried under the law in force when the offense was committed, and, if convicted, punished under that law.

"1311. When by the provisions of a repealing statute a new penalty is substituted for an offense punishable under the act repealed, such repealing statute shall not exempt from punishment a person who has offended against the repealed law while it was in force, but in such case the rule prescribed in the preceding section shall govern."

It seems to us that in these two sections a legislative purpose and intent to avoid and prevent repeals of statutes defining crimes and establishing punishments by new legislation are manifest.

The history of legislation, as disclosed by numerous decisions of the courts upon the very question we are considering, shows that through the inattention, carelessness and inadvertence of the law-making body crimes and penalties have been abolished, changed or modified after the commission of the offense and before trial in such material way as to effect many legislative pardons. To prevent such mistakes and miscarriages of justice many of the states have enacted general saving statutes. None of them have statutes more comprehensive or broader than ours.

In *People* v. *McNulty*, 93 Cal. 427, 29 Pac. 61, the court said: "But construing the new law as passed with the knowledge and in the light of the permanent saving clause existing in the general body of the law, it is clearly constitutional as to future crimes, while it leaves past offenses to be punished under the law as it was when the offenses were committed.

"It is quite clear that a general saving clause, if it be clothed in apt language to express the purpose, is as efficient as a special clause expressly inserted in a particular statute. This proposition is too plain to need the support of authorities, but there *are* authorities directly to the point. *People* v.

*Quinn,* 18 Cal. 122; *United States* v. *Barr,* 4 Saw. 254 [Fed. Cas. No. 14,527]; *Jordan* v. *State,* 38 Ga. 585; *Volmer* v. *State,* 34 Ark. 487; *Acree* v. *Commonwealth,* 13 Bush [Ky.], 353; *State* v. *Shaffer,* 21 Iowa, 486; *State* v. *Ross,* 49 Mo. 416.'' More recent decisions, and to the same effect, are: *In re Davis,* 6 Idaho, 766, 59 Pac. 544; *State* v. *Smith,* 62 Minn. 540, 64 N. W. 1022; *Heath* v. *State,* 173 Ind. 296, 21 Ann. Cas. 1056, 90 N. E. 310.

Appellant's contention that paragraphs 1310 and 1311, *supra,* are temporary in their nature, and were passed to preserve only the crimes and penalties of the Penal Code, does not appeal to us with any convincing force. The very language indicates that they were intended to be a part of the permanent, general laws.

Nor do we think that sections 6 and 7, chapter 10, Laws of 1907, have the effect, as claimed by appellant, of abrogating the general saving statutes of the Penal Code. Indeed, it is apparent that chapter 46, Laws Regular Session of 1912, does repeal chapter 101, Laws of 1909, and takes from the court the discretion lodged with it in fixing the punishment, as provided by paragraphs 174 and 635, of all offenses committed subsequent to its enactment as completely and fully as language can express it. Aided by the rules of construction as given in sections 6 and 7 above, its evident purpose of repealing and modifying the old law cannot be made plainer. The old law is abrogated, repealed and modified for future offenses, but preserved by the saving clause contained in the general body of the Penal Code in so far as the penalties to be inflicted for offenses committed under it are concerned as much as if the later act had contained a special saving clause.

In this case the court sentenced appellant under the indeterminate sentence law of 1909, the law that was in force at the time of the commission of the offense, and rightly so.

Under the assignment that the superior court of Pima county, state of Arizona, had no jurisdiction of the offense, appellant starts out with the premise that the offense was committed while Arizona was a territory, and was an infraction of the territorial laws; that the territory was not an independent sovereignty, but that sovereignty therein adhered in the United States alone, and that crimes committed therein were committed against the government and dignity of the United

States. From this premise he draws the conclusion that all prosecutions for crimes committed while Arizona was a territory should be carried on in the courts of the United States, and not in the courts of another and entirely different sovereign. In other words, appellant combats the right and power of Congress to transfer the jurisdiction of such cases to the state courts, and the right and power of the courts of the state to accept and exercise such jurisdiction. He insists that Congress should have provided that such cases be prosecuted in the federal courts, and that it must now do so if such persons are to be lawfully tried.

In the transition from a territory to a state, the enabling act, by its terms, provided for the continuation of pending local litigation, both civil and criminal, in the state courts, and, further, that criminal offenses committed prior to admission as to which no prosecution was pending, if violations of the criminal laws of the territory, should be subject to prosecution in and punishment by the appropriate state courts in like manner and to the same extent as if said state courts had been established prior to the accrual of such causes of action and the commission of such offenses. Section 33, enabling act, approved June 20, 1910.

Correlating the above provision of the enabling act, the Arizona constitution, section 5, article 22, provides for the prosecution of criminal cases arising before statehood, as follows: "All criminal prosecutions and penal actions which may have arisen, or which may arise, before the change from a territorial to a state government, and which shall then be pending, shall be prosecuted to judgment and execution in the name of the state. All offenses committed against the laws of the territory of Arizona before the change from a territorial to a state government, and which shall not be prosecuted before such change, may be prosecuted in the name, and by the authority, of the state of Arizona, with like effect as though such change had not taken place, and all penalties incurred and punishments inflicted shall remain the same as if this constitution had not been adopted. All actions at law and suits in equity, which may be pending in any of the courts, of the territory of Arizona at the time of the change from a territorial to a state government, shall be continued and trans-

ferred to the court of the state, or of the United States, having jurisdiction thereof.''

The respective sovereignties of the United States and the state of Arizona, acting by and through their properly constituted mediums of power and authority, have said that the appellant and all persons in like situation may be prosecuted and punished in the state courts, as the successors to the territorial courts, for offenses committed therein while Arizona was a territory. If these two sovereignties had, by mutual and reciprocal legislation, no power to vest such jurisdiction, then this court has acted without power in taking jurisdiction of cases pending in the territorial supreme court, for our authority for assuming jurisdiction in such cases is from the same sources. The form of government has been changed, and this case has been transferred from the jurisdiction of one sovereign to that of another, but the latter has the same citizenship, the same boundaries, the same institutions, and the same laws, except where repugnant to our constitution. Our attention has been directed to no fundamental law that forbids or prevents the state court, under the reciprocal provisions of the enabling act and our constitution, from exercising the jurisdiction conferred.

Without attempting to discuss the law as historically set forth, and the reasons therein given, we approve the decision and conclusion of the court in *Higgins* v. *Brown,* 20 Okl. 355, 94 Pac. 703, in which the same question here raised was decided. It seems to have been the universal practice in the newly organized states, from Vermont, 1791, to Utah, 1896, for the state courts to take jurisdiction of criminal offenses committed before admission to statehood.

The judgment of the trial court is affirmed.

FRANKLIN, C. J., and CUNNINGHAM, J., concur.

NOTE.—As to constitutionality of *ex post facto* law changing the nature of penalty, see note in 37 Am. St. Rep. 587.