**Ex parte Veronica D. MANGRUM.**

**No. 57410.**

Court of Criminal Appeals of Texas, Panel No. 1.

April 12, 1978.

Rehearing En Banc Denied May 10, 1978.

---

Roark M. Reed, Dallas, for appellant.

Henry Wade, Dist. Atty., W. T. Westmoreland, Jr., Asst. Dist. Atty., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

Before TOM G. DAVIS, DALLY and W. C. DAVIS, JJ.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from the trial court's denial of relief under a pre-conviction writ of habeas corpus in a misdemeanor case. Art. 11.09, V.A.C.C.P. The appellant is charged by information with welfare fraud in violation of Art. 695c, Sec. 34, V.A.C.S.

Appellant contends that the information is void and that the trial court has no jurisdiction because the offense she is charged with no longer exists.

The general rule is that when there is a valid statute or ordinance under which a prosecution may be brought, habeas corpus is not available to test the sufficiency of the complaint, information, or indictment. *Ex parte Jarvis,* 109 Tex.Cr.R. 52, 3 S.W.2d 84 (1928); *Ex parte Minor,* 146 Tex. Cr.R. 159, 172 S.W.2d 347 (1943); *Ex parte Dickerson,* 549 S.W.2d 202 (Tex.Cr.App. 1977). However, in the instant case, the appellant alleges that there is no valid statute under which she may be prosecuted for welfare fraud, and therefore the information is void. See *Ex parte Ward,* 560 S.W.2d 660 (Tex.Cr.App.1978); *Ex parte Dickerson,* supra.

Appellant is charged, as stated above, by information with having committed the offense of welfare fraud in violation of Art. 695c, Sec. 34, V.A.C.S. This is a misdemeanor offense punishable by a fine of up to one hundred dollars and confinement for

up to two years, or both. The information alleges in pertinent part that appellant did

"knowingly and intentionally attempt to obtain and obtain assistance services and treatment from the Texas State Department of Public Welfare, to-wit: Aid to Families with Dependent Children, in an amount greater than that to which the said defendant, was otherwise justly entitled, by means of a wilfully false statement and representation, impersonation and other fraudulent means, to-wit: the said defendant failed to report income through employment at Colbert-Volks."

The offense is alleged to have occurred on or about October 2, 1975. The information was filed on April 11, 1977.

At the time the information was filed, Art. 695c, Sec. 34, V.A.C.S., read as follows:

"Whoever obtains, or attempts to obtain, or aids or abets any person to obtain, by means of a wilfully false statement or representation or by impersonation, or by other fraudulent means:

"(1) assistance, services, or treatment to which he is not entitled;

"(2) assistance, services, or treatment greater than that to which he is justly entitled;

"(3) Or, with intent to defraud, aids or abets in buying, or in any way disposing of the property of a recipient of assistance without the consent of the State Department, or whoever violates Section 32 or Section 33 of this Act, shall be deemed guilty of a misdemeanor . . . ."

This section of the Public Welfare Act of 1941, Art. 695c, V.A.C.S., was amended by Senate Bill 154 (Acts 1977, 65th Leg., p. 637, ch. 235, eff. May 25, 1977), which reads in part as follows:

"Section 1. Section 34 ·of the Public Welfare Act of 1941, as amended (Article 695c, Vernon's Texas Civil Statutes), is amended to read as follows:

"Section 34.

"(a) Whoever violates Section 32 or Section 33 of this Act commits an offense.

"(b) An offense under this section is a Class A misdemeanor."

Appellant argues that since the provisions of Section 34 as applied to this prosecution were repealed by Senate Bill 154, there is no statute presently in existence to support her prosecution under this information.

As hereinafter noted, the effect of Senate Bill 154 was to provide that offenses deleted by the amendment are now chargeable under the offense of theft as set forth in V.T.C.A. Penal Code, Sec. 31.03. Thus, under certain circumstances the offense may be a felony. It should be noted that Senate Bill 154 does not contain a savings clause within its provisions. The appellant argues that this is a clear indication that the Legislature intended to forgive all prior criminal conduct which had formerly been a violation of Art. 695c, Sec. 34, V.A.C.S.

The State urges that the savings provision of the Texas Code Construction Act, Art. 5429b–2, Sec. 3.11, V.A.C.S., is a general savings provision that allows continued prosecution for acts committed prior to the effective date of Senate Bill 154.

At common law the rule was that in the absence of an effective savings provision the repeal of a criminal statute operated to bar prosecution for earlier violations of the statute whether the prosecutions are pending or have not yet begun at the time of the repeal. The rule is based on the theory that the Legislature by its repeal has indicated an intention that the conduct in question shall no longer be prosecuted as a crime. *United States v. Chambers,* 291 U.S. 217, 54 S.Ct. 434, 78 L.Ed. 763 (1934); *United States v. Tynen,* 78 U.S. (11 Wall.) 88, 20 L.Ed. 153 (1871). See generally W. Lafave & A. Scott, Criminal Law, Sec. 13 (1972).

Texas has followed the common law rule. "If the statute is repealed pending prosecution without a savings clause, no punishment can be inflicted, although the act was done while the law was in force. The prosecution is 'pending' though the case is on appeal. *Wall v. State,* 18 Tex. [682] 683; *Green [Greer] v. State,* 22 Tex. 588; *Shepherd [Sheppard] v. State,* 1 [Tex.] App. 522; *Hubbard v. State,* 2

[Tex.] App. 506; *Tuton v. State,* 4 [Tex.] App. 472; *Halpin [Halfin] v. State,* 5 [Tex.] App. 212; *Whisenhunt v. State,* 18 [Tex.] App. 491; *Kenyon v. State,* 31 [Tex.] Crim. 13, 23 S.W. 191 (pending appeal); *Eichlitz v. State,* 39 [Tex.] Crim. 486, 46 S.W. 643; *Hall v. State,* 52 [Tex.] Crim. 195, 106 S.W. 149." 1 Branch's Ann.Penal Code, 2d Ed., Sec. 20, p. 21 (1956). See 22 C.J.S. Criminal Law § 27, 75 Am.Jur.2d Statutes, § 418, 16 Tex. Jur.2d Criminal Law, § 13.

In *Williams v. State,* 476 S.W.2d 307 (Tex.Cr.App.1972), the defendants were convicted for operating an open saloon. This Court held that where the statute making it unlawful for any person to operate or assist in operating an open saloon was repealed by a 1971 legislative amendment, there was no basis for the prosecution. The defendants were charged with committing the offense of operating an open saloon on or about September 9, 1969, but their convictions in 1970 had not become final and the conduct was no longer an offense under any statute. See also

*Perez v. State,* 480 S.W.2d 687 (Tex.Cr.App. 1972).

In the case of *Sekt v. Justice's Court,* 26 Cal.2d 297, 159 P.2d 17, 167 A.L.R. 833, cert. denied 326 U.S. 756, 66 S.Ct. 96, 90 L.Ed. 454 (1945), the Supreme Court of California was faced with a situation similar to that in the instant case. The defendant was charged with conspiracy to commit a misdemeanor, which crime was itself a misdemeanor at that time under California law. While the defendant's case was pending, the California Legislature determined that conspiracy to commit a misdemeanor should be punished in certain instances as a felony. The amendment did not come within the general savings provision of the California Government Code. The defendant argued, as does the appellant herein, that the effect of the legislative enactment was to pardon him for his prior criminal act. The California Supreme Court recognized the common law rule of abatement but held that "To imply a saving clause in such a situation is simply to give effect to the obvious intent of the Legislature." [1]

1. The following excerpt from *Sekt v. Justice's Court,* supra, reflects the basis for the decision:

"This rule is well settled at common law and is accepted by most American jurisdictions. It is based on presumed legislative intent, it being presumed that the repeal was intended as an implied legislative pardon for past acts. . . . There are at least three situations to which the above rule, according to the great weight of authority, does not apply.

"1. Where the statute passed after the offense is committed but before final judgment mitigates rather than increases the punishment . . . . (T)he cases quite uniformly hold that the offender may be punished under the new law, and that the repeal by amendment of the old punishment does not operate to free the offender from all punishment. All these cases [cited in the opinion], and the cases cited in them, base their conclusion that the offender who commits an offense before the amendment of the statute imposing the lighter sentence gets the benefit of the lighter punishment, upon the ground that it must have been the intention of the Legislature that the offender should be punished, and, since he can be constitutionally punished under the new statute, that should be done. . . .

"2. The second well-settled exception is that repeals by implication are not favored, and where a new statute is passed in a field already occupied by an older statute, the new statute will not be held to have repealed by implication the old statute as to crimes already committed at the time the new statute is passed. As to such crimes the offender will be punished under the old law and the new law will be held to be prospective in operation. . . .

"3. The third well-settled exception is that where there is an outright repeal and a substantial reenactment, it will be presumed that the Legislature did not intend that there should be a remission of crimes not reduced to final judgment. . . .

"This is the rule of decision in California and in the other states, even in the absence of legislative declaration. The cases have clearly established the rule that such restatement, without substantial change, neutralizes any repeal, express or implied. No saving clause or other expression of legislative intent is necessary to accomplish this result. The intent is derived from the fact and purpose of a restatement without change. . . .

"This brings us to the exact situation here present—the legal effect of an amendatory act increasing the punishment. On this precise problem there is a conflict of authority. There is substantial authority to the effect that such an amendment repeals the old law and acts as a remission of all offenses not

Citing *Sekt v. Justice's Court,* supra, and cases from Indiana, Kansas, Kentucky, Louisiana, Missouri, and North Carolina, Wharton's Criminal Law and Procedure, infra, after acknowledging the common-law rule, states:

"A substantial number of cases, however, has ruled that an amendment prescribing for a particular kind of crime greater punishment than was prescribed by the statute thereby amended does not operate as a repeal of the earlier provision, so far as pending prosecutions or criminal liability for a violation committed prior to the effective date of the amendment are concerned, but that on the contrary the earlier provision proscribing punishment remains in force as to offenses committed prior to the time the amendment becomes effective and may thereafter be applied to the prosecution and sentencing of such prior offenders. In so holding, the courts consider that such an amendment increasing punishment is manifestly intended to operate prospectively only rather than retrospectively, and that to effectuate the intent of the Legislature such prospective operation for a saving clause as to prior offenses may properly be implied." R. Anderson, 1 Wharton's Criminal Law and Procedure, Section 22, pp. 49, 50 (1957).

Article 13 of the former Penal Code provided that if the penalty for any offense was increased by subsequent law, the defendant would be punished under the previous law. If, on the other hand, the subsequent law mitigated the punishment for a particular offense, the second law would automatically apply unless the defendant elected at time of trial to receive the penalty proscribed by the old law. *Worley v. State,* 485 S.W.2d 789 (Tex.Cr.App.1972). In accordance with the common-law rule, this provision also provided that if the statute were repealed and no other penalty was substituted, offenders against the repealed law were exempt from punishment except where a conviction had become final prior to the repeal. See also Art. 14, V.A.P.C. (1925); *Mendoza v. State,* 460 S.W.2d 145 (Tex.Cr.App.1970); *Waffer v. State,* 460 S.W.2d 147 (Tex.Cr.App.1970).

■ This specific savings clause in the old Penal Code was repealed by Acts 1973, 63rd Leg., p. 991, ch. 399, § 3(a), eff. Jan. 1, 1974. Two recent savings clauses, one general and the other specific, are now in effect. In 1967, the 60th Texas Legislature passed the Code Construction Act, Art. 5429b–2, V.A.C.S., to provide guidelines for the Texas statutory revision program set out in Art. 5429b–1, V.A.C.S. The Code Construction Act contains a general savings clause that applies to all reenactments, revisions, amendments, and repeals of all Texas codes. See Art. 5429b–2, Secs. 1.02, 3.11, V.A.C.S. The general savings clause of the Code Construction Act, however, is inapplicable to the new Penal Code because a specific savings clause was provided by the Legislature. Acts 1973, 64th Leg., ch. 399, § 6, eff. Jan. 1, 1974. See, Comment, The Texas Penal Code's Savings Clause, 8 St. Mary's L.J. 175 (1976).

reduced to final judgment. . . . In practically all these cases the courts expressed great reluctance in exonerating the offender, but apparently felt that the basic common-law rule, above referred to, compelled such result.

"There is substantial and well-reasoned authority to the effect that where the later statute increases the punishment the Legislature has clearly demonstrated its intent that the act should be punished, and since the offender cannot be punished under the new law because of the ex post facto provision of the Constitution, he will be held under the old law. It is presumed from the very purpose of the amendment that the Legislature intended that all offenders should be punished, and a saving clause is implied."

In *State v. Cline,* 135 Mont. 372, 339 P.2d 657 (1959), the court adopted the reasoning of *Sekt v. Justice's Court,* supra, and stated:

"(T)he Legislature, by increasing the penalty, has clearly indicated that it intended that [the] particular offense be punished and not pardoned or forgiven."

Accord, *State Ex Rel. Huffman v. District Court,* 154 Mont. 201, 461 P.2d 847 (1969); *State v. Rozzell,* 157 Mont. 443, 486 P.2d 877 (1971).

See also, *Ellenwood v. Cramer,* 75 Idaho 338, 272 P.2d 702 (1954); *State v. Banks,* 108 N.H. 350, 236 A.2d 110 (1967).

Cf. *State v. Brittingham,* 238 A.2d 346 (Del.Super.Ct.1968).

In *Jones v. State*, 552 S.W.2d 836 (Tex.Cr. App.1977), this Court held that the defendant could not be prosecuted under the general theft provisions of V.T.C.A. Penal Code, Sec. 31.03, because the specific acts charged were also proscribed by Sec. 34 of the Public Welfare Act of 1941. Article 695c, V.A.C.S. In *Jones*, the defendant was charged with theft because she had applied to the Texas Department of Public Welfare for "Aid to Families with Dependent Children" and on three separate occasions fraudulently represented that she was not employed. As a result of this misrepresentation, she received overpayments totaling $703.00. Although the dollar amount is not specified in the information before us in the instant case, the offense appears to be identical to that described in *Jones*. In *Jones*, this Court observed "that appellant's conduct was in violation of both statutes." This Court specifically found "no evidence that the civil statute was repealed, impliedly or otherwise, by the enactment of the new Penal Code," (footnotes omitted) and concluded that the prosecution should have been brought under the Public Welfare Act, not under the Penal Code. The *Jones* opinion also recognized that the specific criminal provisions formerly contained in Sec. 34 of Art. 695c, V.A.C.S., had been repealed by Senate Bill 154 since the conviction from which that appeal was taken. Thus, this Court, at a time after the effective date of Senate Bill 154, held that prosecution in *Jones* should have been brought under Art. 695c, Sec. 34, V.A.C.S., where the prohibited conduct occurred prior to the amendment set forth in Senate Bill 154.

█ It is clear that conduct occurring after May 25, 1977 (the effective date of Senate Bill 154), formerly denounced as welfare fraud is properly chargeable under the theft provisions of V.T.C.A. Penal Code, Sec. 31.03. A comparison of old Sec. 34 of Art. 695c, V.A.C.S., which provided for a maximum penalty of a $100.00 fine or two years' confinement or both, and V.T.C.A. Penal Code, Sec. 31.03, reveals that in some circumstances the penalty will now be reduced and in other circumstances it will be significantly increased. For example, where, as in *Jones*, the defendant fraudulently misrepresented her employment status and received overpayment from the Department of Public Welfare totaling more than $200.00 but less than $10,000.00, the defendant would now be chargeable under V.T.C.A. Penal Code, Sec. 31.03(d)(4)(A), a third-degree felony. The maximum punishment would be ten years' confinement or a $5,000.00 fine or both. V.T.C.A., Penal Code, Sec. 12.34. If, on the other hand, the amount obtained is at least $20.00 but less than $200.00, the offense under V.T.C.A. Penal Code, Sec. 31.03(d)(3) is a Class A misdemeanor carrying maximum penalty of a $2,000.00 fine or one year in jail or both. V.T.C.A. Penal Code, Sec. 12.21. It is obvious, therefore, that the effect of Senate Bill 154 is to avoid the effect of this Court's ruling in *Jones v. State*, supra, and in certain cases to elevate the offense to that of felony theft.

To accept the proposition urged by the appellant that the effect of Senate Bill 154 is to abolish the offense of welfare fraud and to forgive or legislatively pardon anyone whose conviction was not final prior to May 25, 1977, is to ignore the clear effects of Senate Bill 154 and the holding of this Court in *Jones v. State*, supra, which recognized that conduct violative of Sec. 34 of Art. 695c was also violative of V.T.C.A. Penal Code, Sec. 31.03.

█ The question before us, however, is limited to whether the common-law rule of abatement is applicable to cases of welfare fraud committed prior to May 25, 1977, and not yet reduced to final judgment.

The Texas Code Construction Act, Art. 5429b–2, V.A.C.S., provides as its purpose in Sec. 1.01 that:

"This Act provides rules to aid in the construction of codes (and amendments to them) enacted pursuant to the state's continuing statutory revision program. The rules set out in this Act are not intended to be exclusive but are meant to describe and clarify common situations in order to guide the preparation and construction of the codes."

The Code Construction Act in Sec. 1.02 provides that it is applicable to:

"(1) each code enacted by the 60th or a subsequent Legislature as part of the state's continuing statutory revision program;

"(2) each amendment, repeal, revision, and reenactment of a code, or provision thereof, which amendment, repeal, revision, or reenactment is enacted by the 60th or a subsequent Legislature;

"(3) each repeal of a statute by a code; and

"(4) each rule promulgated under a code."

The savings provision of the Code Construction Act, Sec. 3.11, provides in part as follows:

"(a) Except as provided by Subsection (b) of this section, the reenactment, revision, amendment, or repeal of a statute does not affect

"(1) the prior operation of the statute or any prior action taken under it;

"(2) any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred under it;

"(3) any violation of the statute, or any penalty, forfeiture, or punishment incurred in respect to it, prior to the amendment or repeal; or

"(4) any investigation, proceeding, or remedy in respect to any privilege, obligation, liability, penalty, forfeiture, or punishment; and the investigation, proceeding, or remedy may be instituted, continued, or enforced, and the penalty, forfeiture, or punishment imposed, as if the statute had not been repealed or amended.

"(b) If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment, revision, or amendment of a statute, the penalty, forfeiture, or punishment (if not already imposed) shall be imposed according to the statute as amended."

Article 5429b–1, V.A.C.S., established a "permanent statutory revision program" and provided for the systematic, continual study of the laws of this State and for formal revision on a topical or code basis to clarify, simplify and make generally more accessible the statutory law of this State. The revision of the Texas Penal Code was part of the statutory revision program which will eventually result in Texas statutory law being arranged in 26 topical codes. Freeman, The Texas Legislative Council's Statutory Revision Program, 29 Tex.B.J. 1021 (1966).

The Public Welfare Act of 1941 is not a code within the meaning of either Art. 5429b–1, V.A.C.S., or Art. 5429b–2, V.A.C.S. However, this does not rule out the application of the Code Construction Act, Art. 5429b–2, since Sec. 1.02(3) provides that the Act is applicable to "each repeal of a statute by a code   .   .   ." since the clear effect of Senate Bill 154 is to bring the complained-of conduct within the ambit of V.T.C.A. Penal Code, Sec. 31.03. See *Jones v. State*, supra.

Appellant's reliance on *Thiel v. Harris County Democratic Executive Committee*, 534 S.W.2d 891 (Tex.Sup.1976), is misplaced. In *Thiel*, the Supreme Court only held that the computations of time provisions of the Code Construction Act were not applicable to Art. 13.12 of the Election Code, which specifically defined the deadline for filing applications for places on the ballot. Our opinion herein is not in conflict with *Thiel*, which did not involve the savings clause § 3.11 of the Code Construction Act.

Although involving the construction of the savings provision of the new Penal Code, Sec. 6b of Acts 1973, 63rd Leg., ch. 399, the case of *Gobell v. State*, 528 S.W.2d 223 (Tex.Cr.App.1977), is instructive. In *Gobell*, the defendant had been convicted of theft of a horse under Art. 1440 of the former Penal Code and placed on probation. Subsequently, his probation was revoked. On appeal, he argued that his initial conviction was void because Art. 1440, V.A.P.C., had been repealed and the offense of theft

of a horse was not specifically included in the new Penal Code and therefore was no longer an offense. This Court summarily rejected the defendant's argument, citing the general theft statute, V.T.C.A. Penal Code, Sec. 31.03. The same reasoning is applicable herein. Cf. *Dockery v. State*, 542 S.W.2d 644 (Tex.Cr.App.1976).

Although, as stated above, Texas has recognized the common-law rule of abatement in the absence of a savings provision, 1 Branch's Ann.Penal Code, 2d Ed., Sec. 20 (1956), also states:

> "The repeal of a statute pending prosecution does not exempt the offender from prosecution if the Legislature has otherwise declared. *Wall v. State*, 18 Tex. [682] 683; *Chapin [Chaplin] v. State*, 7 App. [87] 90."

To paraphrase the opinion in *Sekt v. Justice's Court*, supra, in the instant case when the appellant allegedly committed the acts set forth in the information, she violated the law. What she allegedly did is now a violation of a law. Whether characterized as welfare fraud or theft, the constituent elements of the offense are substantially the same. See *Jones v. State*, supra. The Legislature by the enactment of Senate Bill 154 has in effect provided that in certain circumstances welfare fraud may be prosecuted as a felony. To hold in a case such as this that by an amendment which increases the possible punishment in certain circumstances, the Legislature intended to pardon and to forgive all offenses committed before the amendment is to ascribe to the Legislature an intent that an analysis of the effect of the bill demonstrates could not have existed. Could it reasonably be argued that by removing the criminal provisions of Art. 695c, Sec. 34, V.A.C.S., thereby allowing prosecution under V.T.C.A. Penal Code, Sec. 31.03, the Legislature intended that prior to May 25, 1977, the crime of welfare fraud could be committed with impunity? The result urged by appellant would be that the crime of welfare fraud could have been committed with absolute impunity prior to May 25, 1977. This is an unreasonable construction in the face of the fact that after May 25, 1977, the offense could in some instances be a felony. This situation compels the conclusion that the Legislature intended that Senate Bill 154 should operate prospectively only and that past offenders should be prosecuted under the law as it existed prior to May 25, 1977. To imply the savings provision of the Code Construction Act, Art. 5429b–2, Sec. 3.11, is simply to give effect to the obvious intent of the Legislature to apply this provision.[2]

The order of the trial court denying relief is affirmed.

2. "The purpose in enacting a general savings statute is to establish a general legislative policy concerning the effect of repeals and to avoid having to include a specific savings clause in each act in order to carry out that policy. The explanation has been stated by the Arizona court thus:

> 'The history of legislation . . . shows that through the inattention, carelessness, and inadvertence of the lawmaking body crimes and penalties have been abolished, changed, or modified after the commission of the offense and before trial in such material way as to effect many legislative pardons. To prevent such mistakes and miscarriages of justice many of the states have enacted general saving statutes.' [*LaPorte v. State*, 14 Ariz. 530, 533, 132 Pac. 563, 564 (1913).]

"Essential to the success of the legislative program is the court's adoption of the view that the general savings statute is applicable to all subsequent enactments. This the courts have done. The general savings statute is said to apply to a repealing act as if it were expressly incorporated in that act. It is also stated that all legislatures are presumed to act with a knowledge of existing law, including the general savings statute, and that they act with reference to all the laws. Thus, when a repeal is enacted without an express provision concerning existing rights, it is presumed that the legislature intended to afford the protection of the general savings statute." [Footnotes omitted] Ruud, The Savings Clause—Some Problems in Construction, 33 Tex.L.R. 285, 298 (1955).