

# The Attorney General of Texas

December 31, 1982

MARK WHITE
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201-4709
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002-6986
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Henry Wade
Criminal District Attorney
500 Stemmons Tower East
2700 Stemmons Freeway
Dallas, Texas    75207

Opinion No. MW-582

Re:    Prosecution    of    cases
involving fraudulently obtained
food stamps

Dear Mr. Wade:

You advise that the Dallas County District Attorney's Office has recently encountered some difficulty in the prosecution of certain welfare fraud cases where food stamps are fraudulently obtained. Further, you inquire about the appropriate provisions of the Texas Penal Code under which such cases should be prosecuted and which person or entity should be pleaded as the "owner" of the property appropriated, i.e., food stamps, if charges are presented under the Texas theft statute. Your letter also inquires about the legalities of pursuing a conviction against one charged with welfare fraud under those sections of the Penal Code dealing with "Securing Execution of a Document by Deception", Penal Code section 32.46, and "Tampering with a Governmental Record", Penal Code section 37.10. Your final question inquires whether the specificity of section 33.011 of the Human Resources Code bars prosecution under the Texas Penal Code.

The last question was resolved in Ex parte Mangrum, 564 S.W.2d 751 (Tex. Crim. App. 1978), which discussed the applicability of the Public Welfare Act to the prosecution of welfare fraud cases. Senate Bill No. 154, Acts 1977, 65th Legislature, chapter 235, at 637, amended the Public Welfare Act of 1941, article 695c, V.T.C.S. [now codified in the Human Resources Code] to provide that offenses deleted by that amendment are now chargeable under the offense of theft as set forth in section 31.03 of the Penal Code.

It is clear that conduct occurring after May 25, 1977 (the effective date of Senate Bill 154), formerly denounced as welfare fraud is properly chargeable under the theft provisions of V.T.C.S. Penal Code, Section 31.03. A comparison of old Section 34 of Art. 695, V.T.C.S., which provided for a maximum penalty of a $100.00 fine or two years confinement or both, and V.T.C.S. Penal Code, Section 31.03, reveals that in some

> circumstances the penalty will now be reduced and in other circumstances it will be significantly increased.  Ex parte Mangrum, 564 S.W.2d 751, 756 (1978).

The change wrought by Senate Bill No. 154 and cases giving it construction since May 25, 1977, fully dictate that certain acts or omissions formerly proscribed under the Public Welfare Act are now denounced under the theft provisions of Penal Code section 31.03. Additionally, the severity of the offense will now determine whether the defendant shall be charged with a misdemeanor or felony.  For example, one who misrepresents his earnings or employment to obtain welfare benefits greater than $200 but less than $10,000 would now be charged with a third degree felony.  This offense would carry a maximum punishment of ten years in prison or imprisonment and a $5,000 fine.  Penal Code section 12.34.  Should the amount appropriated be less than $200 but greater than $20 the defendant would be charged with a class A misdemeanor, an offense carrying a maximum penalty of one year confinement or a $2,000 fine or both.  Penal Code §12.21. The obvious effect of Senate Bill No. 154 was to elevate certain acts of conduct into the felony range of punishment.  Ex parte Mangrum, supra.

Assuming then that one who fraudulently obtains possession of food stamps may be charged under Penal Code section 31.03, the question of ownership merits discussion at this point.  "Owner" is defined in Penal Code section 1.07(24) three ways:  (1) one having title to the property, (2) possession of the property, whether lawful or not, or (3) a greater right to possession of the property than the actor.  The law handed down in McGee v. State, 572 S.W.2d 723 (Tex. Crim. App. 1978), required a showing that a defendant held a joint interest in the property before the state could proceed under the "greater right to possession" theory.  This law has been expressly overruled.  It is clear from the court's ruling in Compton v. State, 607 S.W.2d 246 (Tex. Crim. App. 1980), that the "joint interest" prerequisite has met its demise and the "greater right to possession" theory has been expanded to include a greater class of persons to be protected from theft.  Compton v. State, supra.

The question of ownership and what interest, if any, is held by the United States Government, the state of Texas, or the agencies or employees of either has received some attention from the Code of Federal Regulations.  The Food and Nutrition Service of the Department of Agriculture has been delegated the responsibility within that department to administer the food stamp program.  The responsibilities delegated to the Food and Nutrition Service are to be carried out by the administrator or some official of the Food and Nutrition Service or by state agencies with respect to claims against households.  7 C.F.R. §721.3 (1982).  The state has been delegated the authority to

determine the amount of, and settle, adjust, compromise or deny all or part of any claim which results from fraudulent or non-fraudulent over-issuances to participating households. 7 C.F.R. §271.4(b) (1982). Further, state agencies are explicitly encouraged to refer for prosecution under state or local fraud statutes those cases where fraud is suspected. 7 C.F.R. §273.16(e)(2) (1982). Certainly, given this delegation of authority from the federal to the state level, the state of Texas, and the state agency which administers the food stamp program, i.e., the Texas Department of Human Resources, would qualify as "one having... a greater right" to possess food stamps than one who obtains them by fraud.

The Court of Criminal Appeals has strongly recommended pleading special ownership in the name of a natural person acting for a corporation or business entity. Eaton v. State, 533 S.W.2d 33 (Tex. Crim. App. 1976); Castillo v. State, 469 S.W.2d 572 (Tex. Crim. App. 1971). The same consideration would surely apply when the United States Government, the state of Texas, or the Texas Department of Human Resources qualify as owners of the property in question. In Compton, the court recognized the unlikelihood of finding any one individual within a corporation who meets all criteria of "possession," i.e., care, custody, control, and management over the property in question. This, in and of itself, does not preclude one's eligibility to qualify as the owner under Penal Code section 1.07(24). Compton v. State, supra, at 251. Accordingly, to plead an individual caseworker as an owner under this section is not proscribed by Compton, so long as the caseworker does possess managerial control over the property appropriated. The court will ultimately look to the employment relationship itself to examine the responsibilities of the individual "owner" vis-a-vis the property in question. The federal regulations discussed above, combined with the court's holding in Compton, would evidently qualify the state, an agency of the state, or the individual caseworker as having a sufficient possessory right to act as an "owner" under the Texas theft statute.

Likewise, Penal Code section 32.46 would serve as grounds for prosecution in those cases where an individual gives false information about his earnings in order to qualify for food stamp benefits. This provision avers that a person may be adjudged guilty of securing execution of a document by deception if, with intent to defraud or harm any person, he, by deception, causes another to sign or execute any document affecting property or service or the pecuniary interest of any person. The term "property" is defined under Penal Code section 32.01(2) to include real property; tangible or intangible personal property including anything severed from land; or "a document, including money, that represents or embodies anything of value." (Emphasis added). Clearly, food stamps would fall under this definition.

Additionally, Penal Code section 37.10, "Tampering with a Governmental Record," could be brought into force when construed with the law of parties. This provision of the Penal Code declares that a person commits an offense if he:

(1) knowingly makes a false entry in, or false alteration of, a governmental record;

(2) makes, presents, or uses any record, document, or thing with knowledge of its falsity and with intent that it be taken as a genuine governmental record; or

(3) intentionally destroys, conceals, removes, or otherwise impairs the verity, legibility, or availability of a governmental record.

Penal Code §37.10(a). The culpability of an applicant who attempts to obtain food stamps by intentionally entering, or causing another person to enter, inaccurate information about his earnings in a government record is clarified under section 7.02 of the Penal Code:

A person is criminally responsible for an offense committed by the conduct of another if:

(1) acting with the kind of culpability required for the offense, he causes or aids an innocent or nonresponsible person to engage in conduct prohibited by the definition of the offense;

(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense....

In view of the foregoing discussion, it appears possible that several different offenses, with different elements, could arise out of the same transaction. Consider, for example, a food stamp applicant who causes an innocent third party, e.g., a caseworker, to make an inaccurate entry pertaining to the applicant's income in a governmental record with the intent to receive food stamp benefits for which he is clearly not entitled. The applicant, under the law of parties, could be prosecuted under Penal Code section 37.10 "Tampering With a Governmental Record," a third degree felony. Assuming the applicant succeeds in his ploy and the caseworker signs the documents certifying the applicant's eligibility for benefits, the recipient could be charged with "Securing Execution of a Document by Deception" under Penal Code section 32.46, also a third degree felony. And

finally, when the recipient actually acquires possession of or "appropriates" the food stamps, the offense of theft under Penal Code section 31.03 has been committed.

Prosecution of all three of the above offenses would probably have been barred under the carving doctrine. Cf. Duckett v. State, 454 S.W.2d 755 (Tex. Crim. App. 1970). The Court of Criminal Appeals in Ex parte McWilliams, No. 64,508 (Tex. Crim. App. May 12, 1982) abandoned this doctrine for the compelling reason that it encouraged crime. The court's ruling and dictum in McWilliams leaves the door open for multiple prosecutions of offenses which may be the product of one transaction. In other words, it now appears that the state may present evidence of criminal conduct in more than one trial against the same defendant, so long as he is charged with two separate offenses.

> Since [the Court of Criminal Appeals] is abandoning the carving doctrine, [it] will now decide double jeopardy questions under the strict construction of the Constitutions of the United States and of this state. The prohibitions against being twice put in jeopardy for the same offense requires a test for defining the 'same offense.' Ex parte McWilliams, No. 64,508 (Tex. Crim. App. May 12, 1982).

The Supreme Court of the United States has already provided such a test:

> [T]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions the test will be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. Blockburger v. United States, 284 U.S. 299 (1932).

The Fifth Circuit Court of Appeals recognized that there may be a substantial overlap in the elements and the evidence presented to prove each offense. However, the "same offense" test will be satisfied by close examination of each statutory element of an offense. Brown v. Alabama, 619 F.2d 376 (5th Cir. 1980).

### S U M M A R Y

> One who fraudulently obtains food stamps by falsely stating his income to qualify for food stamp benefits may be prosecuted under the Texas theft statute, Penal Code section 31.03. The

owner may be designated as the United States Government, the state of Texas, or the Department of Human Resources, or preferably an individual employee whose responsibilities give him managerial control over the food stamps themselves. The state may also prosecute for tampering with a governmental record and securing execution of a document by deception, depending on how the food stamps were obtained. The specificity of any of the three applicable statutes would not bar prosecution under either of the remaining two since each offense contains an element which does not exist in the remaining two. The state is not restricted to prosecuting one of the three offenses assuming the facts satisfy all of the statutory elements. Finally, section 33.011 of the Human Resources Code does not bar prosecution under the Texas Penal Code for offenses occurring after May 25, 1977.

Very truly yours,

M A R K   W H I T E
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Tim Guill
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Rick Gilpin
Tim Guill
Patricia Hinojosa
Jim Moellinger