

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| MARCO ANTONIO ARELLANO, | § | No. 08-19-00240-CR |
| Appellant, | § | Appeal from the |
| v. | § | Criminal District Court No. 1 |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20160D01110) |
| | § | |

## **O P I N I O N**

A jury found Appellant Marco Arellano guilty of the state jail felony offense of possession of more than four ounces, but less than five pounds of a usable amount of marijuana. In a single issue, Appellant contends that House Bill 1325, which amended the Texas Health and Safety Code, altered the definition of marijuana to require a finding that the substance found in his possession had a THC concentration level of over 0.3 percent, and that the trial court erred in failing to so instruct the jury. For the reasons set forth below, we conclude that if there is any change in the law respecting the definition of marijuana for a possession case, it does not apply retroactively and would not therefore apply to Appellant's case. Accordingly, the trial court did not err in failing to give the suggested jury instruction, and we affirm Appellant's conviction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The State's Case in Chief

Based on a tip that narcotics were being stored there, the El Paso Police Department began conducting a surveillance of a house in early 2016. The surveilling officers observed Appellant frequently coming and going from the house and found baggies with marijuana residue in the residence's trash can. Based on these findings, the officers obtained a warrant to search the house, which they executed on February 18, 2016, after they observed Appellant exit the house and drive away. During the search, the officers found several baggies containing a substance they believed, based on their training and experience, to be marijuana, as well as various items of drug paraphernalia, including "bongs" and mason jars containing marijuana residue.

While the house search was underway, another officer followed Appellant in his vehicle and observed him commit a series of traffic violations. The officer initiated a traffic stop, and upon approaching the vehicle, the officer "detected an odor of fresh and burnt marijuana mixture" coming from the vehicle. Appellant immediately informed the officer that he had marijuana in his vehicle and "didn't want to go to jail." After the officer's K-9 alerted to the presence of a controlled substance in the vehicle, the officer found 34 grams of marijuana in a baggie located in the vehicle's center console compartment. Appellant was arrested at the scene, and later indicted on the state jail felony offense of possession of marijuana in an amount of five pounds or less, but more than four ounces.

At trial, the State presented evidence that it turned over the baggies of marijuana found in both the house and vehicle search to NMS labs, an accredited forensic laboratory, to be weighed and tested. A chemist at the lab testified that she weighed the substances that she received from

the police department, and that their total weight--not including the packaging--was 190.88 grams, which was the equivalent of 6.73 ounces; however, she only tested 114.28 grams, or 4.03 ounces to determine if the substance was in fact marijuana. In order to make that determination, she conducted three different tests on the substances, which she identified as a "color test, [a] microscopy test, and a thin layer chromatography," which all came out "positive for marijuana" and revealed the presence of THC. However, she did not specify the THC concentration level found in the substances either during her trial testimony or in her written laboratory report. At trial, the State introduced the marijuana that was found in both the vehicle and the house search into evidence.

### B. Appellant's Request for a Jury Instruction

After the State rested its case, Appellant moved for a directed verdict, arguing that the State had not proven that the substance he allegedly possessed was in fact marijuana. His argument was based on the state legislature's passage of House Bill 1325 during the 2019 legislative session, which amended the Texas Health and Safety Code to provide that "hemp" was excluded from the definition of marijuana. Act of May 22, 2019, 86th Leg., R.S., ch. 764, § 8, 2019 TEX.GEN.LAWS 2084, 2099 (codified at TEX.HEALTH & SAFETY CODE ANN. § 481.002(26)(F)). In turn, the bill which included extensive amendments to the Agricultural Code regulating the newly-legalized hemp industry, defined hemp as having a THC concentration level of less than 0.3%. TEX.AGRIC.CODE ANN. § 121.001. Appellant argued that these changes placed the burden on the State to prove that the substance he possessed was not hemp, or in other words, that it had a THC concentration level above 0.3%. Because the State had presented no evidence of the THC

3

concentration level of the substance, Appellant argued that the State had not met its burden of proof.

The State responded that House Bill 1325 was not intended to change the State's burden of proof in a possession case, and in any event, it did not go into effect until June of 2019, over three years after Appellant allegedly committed his offense. The State argued that the legislature did not intend for the amendments set forth in the bill to be applied retroactively to offenses committed before its effective date. The trial court concluded that the amendment was not intended to be applied retroactively, and therefore ruled that it did not apply to Appellant's case and denied the motion for directed verdict. Appellant then requested that the trial court provide the jury with an instruction regarding what he believed was the new "definition" of marijuana, but the trial court denied that request as well.

Following trial, the jury found Appellant guilty as charged in the indictment. The trial court sentenced Appellant to a 12-month term in a state jail facility, and this appeal followed. In a single issue, Appellant contends that the trial court committed jury charge error by denying his request for a jury instruction that presumably would have defined marijuana as having a THC concentration level over .03%.[1] For the reasons set forth below, we disagree.

---

[1] In his brief, Appellant sets forth the standard of review and the law applicable to challenges to the sufficiency of the evidence to support a judgment of conviction. However, as the State points out, Appellant's stated point of error, the summary of his argument, and his analysis are solely directed at the above-described jury charge error, and he provides no argument on the issue of whether the evidence was sufficient to support his conviction, other than the substance not being proved to be marijuana under the new definition. Accordingly, our analysis is similarly limited to the alleged jury charge error upon which Appellant's sole argument is based. *See* TEX.R.APP.P. 38.1(i) (the brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record).

## II. DISCUSSION

### A. Standard of Review

In reviewing claims of jury charge error, we engage in a two-step process. *See Cortez v. State*, 469 S.W.3d 593, 598 (Tex.Crim.App. 2015). First, we determine whether the charge was erroneous, and if it was, we then determine whether the error was harmful, with the standard of review for harm being dependent on whether the error was preserved for appellate review or not. *Id.* However, if we determine that the charge was not erroneous, we do not conduct a harm analysis. *Id.*

The purpose of a jury charge is to "instruct the jurors on all of the law applicable to the case." *Cortez*, 469 S.W.3d at 598. And to that end, Texas law imposes an affirmative duty on a trial court to correctly instruct the jury on the law of the case. *Mendez v. State*, 545 S.W.3d 548, 551-53 (Tex.Crim.App. 2018) (trial court must "deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case.") (internal quotation marks omitted); *see also* TEX.CODE CRIM.PROC.ANN. art. 36.14. In addition, when requested, a trial court is required to provide the jury with an instruction on any defensive issue raised by the evidence, regardless of the source of the evidence or how weak or contradicted the evidence might be. *See Miller v. State*, 815 S.W.2d 582, 585 (Tex.Crim.App. 1991) (op. on reh'g) (a defendant is entitled to an instruction on a defensive issue if the issue is raised by the evidence, whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the evidence).

### B. House Bill 1325

The stated intent of House Bill 1325 was to regulate the newly legalized hemp industry. *See* TEX.AGRIC.CODE ANN. § 121.002. To that end, the legislature added two new chapters to the Texas Agricultural Code which created a detailed network of regulatory provisions, imposing licensing requirements for those growing hemp, specifying various rules pertaining to the cultivation, harvesting and transportation of hemp, and imposing both criminal and civil penalties for violations of those regulations. *Id*. §§ 121.001-121.004, 122.001-122.404.

Because marijuana is still illegal in Texas, and since both marijuana and hemp are cultivated from the same plant, the legislature found it necessary to draw a distinction between the two substances. The legislature did so by adding the following definition of "hemp" to the Agricultural Code, defining it as: "[T]he plant Cannabis sativa L. and any part of that plant, including the seeds of the plant and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." *Id*. § 121.001.

### C. Appellant's Claim and the State's Response

Appellant focuses on the State's burden in a possession of marijuana case to prove: "(1) a person (2) did knowingly or intentionally (3) possess (4) a usable quantity of (5) marijuana (6) amount possessed in ounces as set forth in statute." *Lejeune v. State*, 538 S.W.2d 775, 777 (Tex.Crim.App. 1976); *see also* TEX.HEALTH & SAFETY CODE ANN. § 481.121 ("a person commits an offense if the person knowingly or intentionally possesses a usable quantity of marihuana," in the amounts listed in the statute). Here, Appellant contends that House Bill 1325 created a new definition of marijuana, which required the State to prove that the substance he possessed had a

6

THC concentration level over 0.3%, and which, in turn, required the trial court to instruct the jury on that definition.

Responding to that argument, the State argues that section 481.184 expressly provides that the State is "not required to negate an exemption or exception provided by this chapter in . . . any trial, hearing, or other proceeding under this chapter," and that instead, a "person claiming the benefit of an exemption or exception has the burden of going forward with the evidence with respect to the exemption or exception." *Id*. § 481.184.[2]  Accordingly, the State urges that the trial court is not required to instruct the jury on the exceptions to the definition of marijuana in the jury charge unless the defendant comes forward with some evidence to show that the substance identified as marijuana contained any parts excluded by the statutory definition.  And because Appellant never presented any evidence that the substance could have been hemp, the State urges that the trial court did not err in omitting it in the charge.

Compelling as the parties' arguments might be, we turn to another issue raised by the State and relied on by the trial court below: retroactivity of the new enactment.

### D.  House Bill 1325 Does Not Apply Retrospectively to Appellant's Case

The State also argues that even if the legislature intended to change the definition of the term "marijuana" and place an affirmative burden on the State to prove the THC concentration level of a substance alleged to be marijuana, the legislature did not intend to apply this change

---

[2] Section 481.002(26) of the Health and Safety Code defines the term, "Marihuana," to mean "the plant Cannabis sativa L., whether growing or not, the seeds of that plant, and every compound, manufacture, salt, derivative, mixture, or preparation of that plant or its seeds."  TEX.HEALTH & SAFETY CODE ANN. § 481.002(26).  Prior to the enactment of House Bill 1325, section 481.002(26) of the Code listed five items that were not included within the definition of the term, "marihuana."  House Bill 1325 made only one change to section 481.002(26) of the Code, which was to add hemp--as defined by the Agricultural Code--to the list of the other five already-excluded items.  *Id.* § 481.002(26).

retroactively to offenses committed before its effective date. Appellant, on the other hand, argues, without citation to authority, that the definitions to be used in a jury trial are in effect, always the "definitions of [the] current moment," and he therefore argues that any changes in the definition of marijuana must be applied to any case tried after the effective date of the statute, regardless of the date of the offense. For the reasons set forth below, we agree with the State.

When the legislature amends a penal code provision, the first question to ask is whether the legislation contains a "savings clause" that expresses whether the amendment was intended to be applied retroactively to offenses committed prior to the amendment's effective date, or whether the statute applies prospectively only. *See, e.g.*, *Vandyke v. State*, 538 S.W.3d 561, 570 (Tex.Crim.App. 2017) (amendment to Health and Safety Code contained a savings clause expressly providing that the change in the law applied to offenses committed "before, on, or after the effective date of the Act . . ."). We note, as did our sister court in Dallas, that the legislature did not include a savings clause when it enacted House Bill 1325. *See Smith v. State*, 620 S.W.3d 445, 450-51 (Tex.App.--Dallas 2020, no pet.). And in the absence of a specific savings clause in the law itself, we look to the "general savings clause" provision found in the Code Construction Act, which is applicable in such situations. *Id*. at 450-51, *citing* TEX.GOV'T CODE ANN. § 311.031; *see also See Ex parte Mangrum*, 564 S.W.2d 751, 755 (Tex.Crim.App. [Panel Op.] 1978) (recognizing that the general savings clause found in the Code Construction Act is only applicable in the absence of a "specific savings clause").

For our purposes, section 311.031 provides that, except in limited circumstances, an amendment to a statute does not affect the prior operation of the statute, or "any violation of the statute or any penalty, forfeiture, or punishment incurred under the statute before its amendment

8

or repeal." TEX.GOV'T CODE ANN. § 311.031(a)(3). In other words, when applicable, the general savings clause typically renders an amendment to a statute prospective only, in the absence of a specific savings clause stating otherwise. *See also id*. § 311.022 ("A statute is presumed to be prospective in its operation unless expressly made retrospective."); *In re T.G.*, No. 03-07-00543-CV, 2008 WL 2468697, at *6-7 (Tex.App.--Austin June 19, 2008, pet. denied) (mem. op.) (as the legislature knew how to make an amendment to a statute retrospective in nature, its failure to do so indicating its intent that the amendment was to operate prospectively only).

The general savings clause provides for a limited exception in situations in which an amendment to a statute reduces the penalty or punishment for an offense when the defendant's punishment has not yet been assessed. TEX.GOV'T CODE ANN. § 311.031(b). However, as the court in *Smith* pointed out, this exception is inapplicable to the amendment made to section 481.002 of the Texas Health and Safety Code, as the amendment did not reduce the range of punishment for possession cases. *Smith*, 620 S.W.3d at 451-452. Instead, at most, it "narrowed the scope of what is now considered illegal marijuana," but kept in place the sentencing structure that imposes varying ranges of punishment depending on the weight of marijuana possessed. *Id.* at 451-52.

We therefore agree with the court in *Smith* that because House Bill 1325 contains no specific savings clause, the amendments contained therein apply prospectively in accordance with the general savings clause. So even if Appellant is correct in his argument that the bill altered the definition of marijuana, any such change in the law would not apply to his case, as his offense was committed well before the bill's effective date. *Id.* at 453*; see also Gaffney v. State*, No. 06-19-00189-CR, 2020 WL 465280, at *2 n.4 (Tex.App.--Texarkana Jan. 29, 2020, no pet.) (mem. op.,

9

not designated for publication) (finding that House Bill 1325 did not apply to defendant's case where his offense was committed prior to its effective date); *Childress v. State*, No. 06-19-00125-CR, 2020 WL 697903, at *3 n.6 (Tex.App.--Texarkana Feb. 12, 2020, no pet.) (mem. op., not designated for publication) (same). And in turn, we conclude that the trial court was therefore under no duty to instruct the jury using the amended version of section 481.002(26), given its inapplicability to his case. *See generally Harrison v. State*, 259 S.W.3d 314, 316-17 (Tex.App.--Beaumont 2008, no pet.) (trial court did not err in instructing the jury on the findings required for a conviction under the version of the statute in effect at the time his offense was committed). Finding no error in the jury charge, we do not conduct a harmless error analysis. *Cortez*, 469 S.W.3d at 598.

Appellant's Issue One is overruled.

## III.  CONCLUSION

The trial court's judgment is affirmed.

JEFF ALLEY, Justice

June 30, 2021

Before Rodriguez, C.J., Palafox, and Alley, JJ.

(Do Not Publish)

10